UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

04 11851 WGY

PAUL DAVIS,

    Plaintiff,

vs.

SUFFOLK COUNTY, SUFFOLK COUNTY SHERIFF'S DEPARTMENT, and ANDREA CABRAL (in her official capacity).

    Defendants.

MAGISTRATE JUDGE _____

Civil Action No. _____

RECEIPT # _____
AMOUNT $ _____
SUMMONS ISSUED _____
LOCAL RULE 4.1 _____
COMPLAINT / WAIVER FORM _____
MCF ISSUED _____
BY DPTY. CLK. _____
DATE _____

## PARTIES

1. Paul Davis, a resident of Mansfield, Massachusetts, was unlawfully terminated from his employment with the Department for truthfully reporting unlawful beatings of inmates to federal authorities.

2. Defendant Suffolk County Sheriff Department (the "Department") is responsible, inter alia, for ensuring the safety of inmates and personnel at the Suffolk County House of Correction (the "HOC") and the Nashua Street Jail (the "Jail") and lawfully operating its correctional facilities.

3. Defendant Suffolk County is a Massachusetts county government, of which the Department, the Jail and the HOC are instrumentalities. All references in this Complaint to the Jail, the HOC and the Department also refer to Suffolk County. The defendant Suffolk County and the defendant Suffolk County Sheriff's Department are "persons" within the meaning of 42 U.S.C. § 1983.

1

4. Defendant Andrea Cabral has been Sheriff of Suffolk County since approximately December 2002, when she was appointed to that position following the resignation of Richard Rouse amidst widespread allegations of inmate abuse by Department personnel, mismanagement, retaliation and other alleged unlawful activities. Defendant Cabral is responsible for the operations of the Department, the HOC and the Jail, including the establishment of the Department's policies and practices. Defendant Cabral, upon information and belief, is a resident of the Commonwealth of Massachusetts.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this case pursuant to 28 U.S.C. §1331 insofar as the action arises under the Constitution and laws of the United States. Mr. Davis invokes pendent jurisdiction of this Court on all issues presented.

6. Venue is proper in this district pursuant to 28 U.S.C. §1391(b)(1) insofar as the Defendants reside in the Commonwealth of Massachusetts and pursuant to 28 U.S.C. §1391(b)(2) insofar as a substantial part of the events giving rise to this suit occurred in this district.

## BACKGROUND

7. The Suffolk County Sheriff's Department in its operation fosters a "code of silence" which serves to hide unlawful actions by its employees and repress reporting of misconduct, while enabling Department management to remain blind to the actual facts regarding incidents which occur within its facilities with patternlike repetition.

8. The Department has failed to abide by instructions from the Special Commission that investigated the operations of the Department in 2002, to eradicate the code of silence and retaliatory practices. In its report, the Special Commission "urge[d] an aggressive attack on the

2

code of silence that prevents staff members from reporting the misconduct of fellow staff members" and advised that the "Department must ensure that employees who do come forward with information are fully protected from retaliation by other officers and are supported by the administration."

9. Mr. Davis was one of the many victims of the Department's pattern of retaliation. The Department terminated him because he shared misconduct by his fellow officers with the Federal Bureau of Investigation and testified truthfully under oath about that misconduct in this Courthouse.

10. The Defendants' conduct violates federal and state laws as outlined below. Mr. Davis seeks compensation for damages resulting from his discharge, and punitive damages in an amount that will convince the Defendants to institute procedures to facilitate the accurate reporting of incidents occurring within the jail and eradicate the code of silence.

## STATEMENT OF FACTS

### I. Those Who Break the Code of Silence Suffer Retaliation by The Department

11. While Mr. Davis was employed by the Department, employees were coerced into following the code of silence, afraid of retribution and harassment by management and co-workers.

12. The Department has victimized those who do not heed the code of silence.

13. One example of another Department guard who, like Mr. Davis, experienced the Department's retribution is Bruce Baron. After reporting a supervisor for violating HOC rules, Mr. Baron was forced by the HOC to resign in 1998. The supervisor, however, only received a three-day suspension and then came back to work.

14. The Department's Investigative Department did not look into Mr. Baron's reports of over 30 incidents of harassment by his co-workers and management, which occurred after Mr. Baron had reported his supervisor to the HOC.

15. After a trial in this Court, in May 2003 a jury awarded Mr. Baron $500,000 in emotional distress damages as a result of the Department's retaliatory policies and practices.

16. After the jury award to Mr. Baron, the Boston Globe reported that his attorney had stated: *"Apparently, the code of silence still exists."*

17. The Department similarly victimized Mr. Davis by discharging him for breaking the code of silence.

## II. Mr. Davis Participated in Implementing the Department's Code of Silence at the Direction of his Superior Officers in the Department

18. On one (1) occasion in 1998 and on three (3) occasions in 1999, Mr. Davis was a participant in incidents involving the control of recalcitrant and/or disruptive inmates within the HOC together with other officers in the Department.

19. In each of the incidents, physical force was used against the inmate or inmates involved by members of the Department, but Mr. Davis did not either participate in the use of this force, nor himself use any excessive, illegal or unauthorized physical force against any of the inmates.

20. He did however, after the encounters were concluded, write reports on three (3) occasions which omitted certain salient details of the incidents and in that respect provided an inaccurate and false depiction of the event. On each of these occasions, these reports were written at the direction of Mr. Davis' shift superior or supervisor, who had personal knowledge of the entirety of the subject matter and who received the completed report, reviewed and approved it, often approvingly using the phrase "good report."

21. On the remaining occasion, Mr. Davis was questioned by a Department investigator about Davis' observations regarding several officers attempt to restrain an unruly inmate a week earlier. Mr. Davis responded truthfully about his own involvement in the matter but followed the earlier directions of his supervisors and did not accurately report or include any improper actions by his fellow officers or his supervisors and exaggerated the actions of the inmate either in answering the investigator's questions or in completing a report made after the interview done at investigator's specific direction.

22. All of these actions were taken by Mr. Davis because they were mandated by the Department's "code of silence" and its policy of retaliating against any who violated its tenets.

23. Mr. Davis also feared adverse job action, by the Department, ostracization by his co-workers, and intimidation from his supervisors if he contravened the "code of silence" and related these events he actually witnessed fully and completely in the contemporaneous reports filed at the direction of superiors.

24. The culture bred by the "de facto" enforcement of the unwritten but pervasive code of silence by the Department and Mr. Davis' supervisors represents poor management policy by enabling groups within the Department who believe they may selectively enforce only those rules which they deemed appropriate; an insidious practice which debases the corrections profession and suppresses the flow of accurate information regarding the actual operation of and conditions within the Department's facilities.

25. The maintenance of a code of silence breeds unethical behavior, encourages abuse and cover-ups, while promoting disrespect of staff and increasing the potential inmate retaliation against corrections officers.

26. Enforcement and maintenance of this "code of silence" is violative of the First Amendment to the United States Constitution in that it inhibits or suppresses worthwhile free speech. It also contravenes specific statutes of the Commonwealth of Massachusetts.

27. However, when Mr. Davis was asked about certain of these incidents which occurred at the jail by agents of the Federal Bureau of Investigation, he resolved to and did speak fully, completely and truthfully regarding these matters to the agents of the federal government.

28. Thereafter, he testified in federal court on March 5 and March 6, 2003 in the trial of United States v. Eric J. Donnelly, et. al, about the criminal use of excessive force and obstruction of justice committed by Jail lieutenants, deputy sheriffs and guards. After telling the truth, under oath both in appearances before a United States Grand Jury and later at trial (all in contravention of the Department's unwritten but very real code of silence) Mr. Davis was terminated by the Department. This termination occurred despite the Department's receipt of a written commendation of Mr. Davis acknowledging his truthful cooperation and testimony before the grand jury and at trial in that case. United States Attorney Michael J. Sullivan's letter of April 22, 2003 to Sheriff Cabral provides in relevant part:

> . . . .
> *In the course of the investigation, Deputy Paul Davis was questioned before his grand jury appearance initially about his knowledge of an incident involving detainee Nikolas Dais. With no promises or inducements except the encouragement to tell the truth before the grand jury, Deputy Davis gave testimony which was important evidence against Brian Bailey for the unlawful assault of Mr. Dais and against another deputy, Anthony Nuzzo, concerning his role in the cover-up of the incident. Subsequently, under a proffer letter agreement that only precluded the government from using his words against him directly, Deputy Davis gave additional significant first-hand information about three additional incidents where officers and lieutenants used and/or authorized the use of intentional excessive force and then participated in a cover-up by writing false reports and lying to investigators from SID.*
>
> *Deputy Davis's truthful cooperation and testimony in the grand jury was a very significant contribution to the grand jury's ability to return the multi-count superseding indictment it did. The trial team has informed me that the fact that Deputy Davis was*

*willing to, and did, tell the truth at the grand jury also facilitated the decision of other officers to come forward and tell the truth when faced with a grand jury subpoena.*

*I have been informed by the trial team that at trial, Deputy Davis testified fully and completely. In the course of his testimony, as you are aware, he admitted to having participated with others, including the defendants, in falsifying reports and lying to SID investigators to cover up the incidents of excessive force that he witnessed. While his proffer agreement with the government did not preclude him from being prosecuted for any incident where he himself used excessive force, the government found no such evidence throughout its investigation.*

*While we certainly understand that you must take disciplinary administrative action against Deputy Davis, you should also be advised that we have concluded that Deputy Davis was truthful and cooperative with this Office in its efforts to investigate and prosecute those supervisors and officers who repeatedly used or encouraged beatings of detainees as punishment. I am sure you agree that cases such as these cannot be prosecuted without the cooperation of officers such as Deputy Davis who, in the face of enormous pressures from his colleagues, showed a willingness to own up to his own conduct and to testify truthfully against others.*

29. This unwarranted termination of employment was in contravention of the protections afforded Mr. Davis by the First Amendment to the United States Constitution, and contrary to the public policy of and the statutes of the Commonwealth of Massachusetts but was consistent with the operational standards and method of operating the Department.

### III. Past Mismanagement within the Department prompted the creation of a Special Commission which investigated the continuing pattern of operating deficiencies with in the Department

30. The Department's management problems and allegations of inmate abuse by its officers led then-acting Governor, Jane Swift, to convene a Special Commission in July of 2001 to investigate and report on the the Department and its facilities. The Special Commission panel included seven independent experts with expertise in areas relevant to evaluating the Department's operations.

31. In the lengthy report issued by the Special Commission (the "Report") after more than a year of investigation, the Special Commission noted that employees provided information only "reluctantly, perhaps fearful of criticism or even retaliation."

32. The Report also discussed the Department's poor training and mismanagement of its personnel, and described the Department as a "deeply-troubled institution" in which "egregious" incidents of physical and sexual abuse by officers against inmates had occurred.

33. The Report also concluded that the Department "continue[d] to be a disturbingly closed system in which outside input and internal and external accountability are limited" and warned that the Department should take all steps necessary to eliminate the code of silence from its facilities.

34. More to the point, the Report concluded that "[s]taff maintain a code of silence due to concern about retaliation." The Commission also "urge[d] an aggressive attack on the code of silence that prevents staff members from reporting the misconduct of fellow staff members" and warned that the "Department should attempt to penetrate the existing code of silence at every turn." The Commission also urged that the "Department must ensure that employees who do come forward with information are fully protected from retaliation by other officers and are supported by the administration."

## IV. The Defendants Unlawfully Terminated Mr. Davis After He Broke the Code of Silence and Spoke Truthfully to Federal Law Enforcement Agents

35. Despite the findings and instructions of the Special Commission, the Department has continued to maintain the retaliatory policies and practices which allow the code of silence practical at the jail to flourish.

36. Immediately after Mr. Davis' testimony in this United States Courthouse at trial of

8

United States v. Donnelly et al on or about March 7, 2003, he was notified of his placement on administrative leave without pay by the Department. Subsequently, on or about May 2, 2003, he appeared as ordered at a disciplinary hearing convened by the Department before the Chief of Staff of the Department. On or about July 15, 2003, he was given notice of his termination from the department for the stated reason that:

> ...the Hearing Officer has determined that, among other things, you filed numerous false and misleading incident reports and use of force reports; repeatedly covered up the use of excessive force by other jail officers; repeatedly failed to take affirmative or remedial action when officers used excessive force against detainees; repeatedly lied to and misled superior officers in your verbal and written reports on incidents involving excessive use of force against detainees; lied to SID investigators and interfered in SID investigations into use of excessive force by officers; initially lied to the FBI about your knowledge of and involvement in the use of excessive force and cover-up of department policies; knowingly and intentionally violated department policies; and never reported the actions of the officers to superior officers who you knew did not approve of or condone the abusive treatment of detainees.

37. Course materials from various training sessions conducted by the Department on different occasions and attended Mr. Davis as a requirement of his employment were exhibits at his hearing along with Mr. Davis' attendance records. These Department training materials which were independently reviewed by the Stern Commission were described by that body as a "canned curriculum" which relied heavily on a basic training promulgated by the Massachusetts Sheriffs Association. They were faulted for espousing a "management-focused direction (e.g. preventing Department liability)" while failing in both purpose and practice in meeting both the "Department's or the employees' actual training needs."

38. The Stern Commission Report also criticized the Department's instruction lesson plan relied on to determine Mr. Davis' employment as both dated [last reviewed in 1994] and lacking essential components ["does not incorporate contemporary material surrounding such

9

issues as sexual misconduct and excessive force **and code of silence among officers."** (bolding added for emphasis)].

39. On the other hand, the hearing officer turned a blind eye to Mr. Davis' truthful trial testimony in this federal Courthouse on March 5 and 6, 2003 as well as United States Attorney Michael J. Sullivan's April 22, 2003 letter to Sheriff Cabral setting forth the government's evaluation of Mr. Davis' truthful testimony and praising him for coming forward. These actions of the Sheriff, acting through her designee, and of the Department in ending Mr. Davis' employment with the Department, are yet another instance of the bizarre operation of a personnel management system which often produces results characterized as "anomalous" by the Stern Commission.

40. This aptly describes this scenario where the Department's full retribution was visited on Mr. Davis who was not involved in any instances of physical abuse of or use of excessive force on inmates while those actually accused of these offenses (and found probably involved by Grand Jury indictment) remain employed.

40. Actions of the type inflicted on Mr. Davis speak volumes about the actual existence of the code of silence within the Department and its facilities while providing the dramatic and concrete evidence of the Sheriff's and her designees continued allegiance to its tenets. It is also contrary to law.

41. Knowledge of such action speaks louder than words and blunts any efforts to penetrate the existing code of silence, make its hold on Department corrections officers and jail guards more subterranean and insidious, and nullify the practical effect of any training and orientation programs on the subject of rejecting and such "code" all as recommended by the Stern Commission.

42. While on information and belief, various types of misconduct by the Department within its facilities and by its personnel are still being investigated by law enforcement agencies, Mr. Davis has again truthfully testified in this federal Courthouse as a witness for the United States in the United States in October 2003 in the case of United States v. Randall Sutherland.

43. The actual reason for Mr. Davis' dismissal from the Department was his violation of its unwritten code of silence and his truthful statements to law enforcement, personnel and subsequently to grand and petit juries in connection with trials held in this Courthouse and at other proceedings in this United States District Court.

44. Mr. Davis' dismissal is but another example of a Department pattern of reacting to allegations of impropriety, and even court findings of wrongful conduct, recalcitrantly as its refusal to make good on its $5,000,000.00 portion of a settlement to victims of an unlawful policy maintained by the Department until found in civil contempt and fined *per diem* by a Judge of this Court well illustrates.

## COUNT I
### (Violation of M.G.L. 149, § 185)
### (Suffolk County, Suffolk County Sheriff's Department)

45. Mr. Davis incorporates by reference and realleges the allegations set forth in paragraphs 1 - 44 of this Complaint as if expressly set forth herein.

46. The Commonwealth of Massachusetts has long-standing laws to protect whistleblowers such as Mr. Davis from retaliation for engaging in good public deeds such as cooperating with law enforcement agencies. One of those laws is M.G.L. c. 149, § 185, which protects persons who work for the Commonwealth or any of its instrumentalities or agents.

47. As a result of the conduct as set forth above, Mr. Davis was subjected to retaliatory action for having disclosed to law enforcement agencies information regarding activities, practices and policies of Suffolk County and the Sheriff's Department that he reasonably believed violated the law and/or posed a risk to public safety. Without question, such retaliation violated M.G.L.c. 149, § 185.

48. As a result of the Defendants' conduct, Mr. Davis has suffered injuries and damages including, but not limited to, treble lost wages and benefits, emotional distress and attorneys' fees, and is entitled to reinstatement and other equitable relief.

## COUNT II
### (Violation of 42 U.S.C. § 1983)
### (All Defendants)

49. Mr. Davis incorporates by reference and realleges the allegations set forth in paragraphs 1 - 48 of this Complaint as if expressly set forth herein.

50. Mr. Davis exercised his First Amendment Right to free speech on several occasions by speaking with law enforcement officials on matters of public concern.

51. Mr. Davis was terminated from employment for having exercised his right to speak on matters of public concern.

52. The actions of the Defendants were attributable to the policies and/or established practices of Suffolk County, the Department and Defendant Cabral.

53. As a result, Mr. Davis is entitled to compensatory and punitive damages, and attorneys' fees, and is entitled to injunctive and other equitable relief.

## COUNT III
### (Termination in Violation of Public Policy)
### (Suffolk County, Suffolk County Sheriff's Department)

54. Mr. Davis incorporates by reference and realleges the allegations set forth in paragraphs 1- 53 of this Complaint as if expressly set forth herein.

55. The Defendants' conduct violated the Commonwealth's established public policy of encouraging individuals to cooperate with law enforcement officials.

56. The Defendants discharged Mr. Davis because of his cooperation with a law enforcement agency.

57. Such conduct constitutes a termination in violation of public policy.

58. As a result, Mr. Davis is entitled to compensatory and punitive damages, emotional distress damages, and attorneys' fees.

### COUNT IV
### (Massachusetts Civil Rights Act, M.G.L. c. 12 §§ 11H and 11I)
### (All Defendants)

59. Mr. Davis incorporates by reference and realleges the allegations set forth in paragraphs 1- 58 of this Complaint as if expressly set forth herein.

60. Through the above-described conduct, the Defendants interfered or attempted to interfere by threats, intimidation and/or coercion, with Mr. Davis's exercise and enjoyment of rights under the constitutions and laws of the United States and of the Commonwealth of Massachusetts.

61. As a result, Mr. Davis has suffered injuries and damages including, but not limited to, lost wages, lost benefits, compensatory damages, emotional distress and attorneys' fees, and is entitled to injunctive and other equitable relief.

**WHEREFORE**, Mr. Davis requests that the Court:

1. Enter judgment against the Defendants on all Counts;

2. Reinstate Mr. Davis to his position as a jail officer with the Department continuing him on administrative leave, WITH PAY, until resolution of this controversy;

3. Enjoin the Defendants from further engaging in the unlawful conduct stated in this Complaint;

4. Award all rights and benefits of employment retroactively to March 2003 to Mr. Davis as if he had not been terminated and retaliated against, including, without limitation, back pay, and consequential damages in an amount to be determined at trial;

5. Award compensatory damages, including emotional distress damages caused by the conduct of the Defendants;

6. Award punitive and exemplary damages in an amount to be determined at trial;

7. Award treble damages consistent with M.G.L. c. 149 § 185;

8. Award attorneys' fees and costs in bringing this action; and

9. Award such other relief as this Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY FOR ALL ISSUES SO TRIABLE.**

                                        **Respectfully submitted,**
                                        **Paul Davis,**
                                        By his attorney,

                                        _____
                                        George F. Gormley
                                        George F. Gormley, P.C.
                                        655 Summer Street
                                        Boston, Massachusetts 02210
                                        (617) 478-2750
                                        BBO #204140

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. TITLE OF CASE (NAME OF FIRST PARTY ON EACH SIDE ONLY) __Davis v. Cabral__

2. CATEGORY IN WHICH THE CASE BELONGS BASED UPON THE NUMBERED NATURE OF SUIT CODE LISTED ON THE CIVIL COVER SHEET. (SEE LOCAL RULE 40.1(A)(1)).

   ___ I.    160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

   _X_ II.   195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,    *Also complete AO 120 or AO 121
             740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.       for patent, trademark or copyright cases

   ___ III.  110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
             315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
             380, 385, 450, 891.

   ___ IV.   220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
             690, 810, 861-865, 870, 871, 875, 900.

   ___ V.    150, 152, 153.

3. TITLE AND NUMBER, IF ANY, OF RELATED CASES. (SEE LOCAL RULE 40.1(G)). IF MORE THAN ONE PRIOR RELATED CASE HAS BEEN FILED IN THIS DISTRICT PLEASE INDICATE THE TITLE AND NUMBER OF THE FIRST FILED CASE IN THIS COURT.

   __none__

4. HAS A PRIOR ACTION BETWEEN THE SAME PARTIES AND BASED ON THE SAME CLAIM EVER BEEN FILED IN THIS COURT?

   YES    (NO)

5. DOES THE COMPLAINT IN THIS CASE QUESTION THE CONSTITUTIONALITY OF AN ACT OF CONGRESS AFFECTING THE PUBLIC INTEREST? (SEE 28 USC §2403)

   YES    (NO)

   IF SO, IS THE U.S.A. OR AN OFFICER, AGENT OR EMPLOYEE OF THE U.S. A PARTY?

   YES    NO    N/A

6. IS THIS CASE REQUIRED TO BE HEARD AND DETERMINED BY A DISTRICT COURT OF THREE JUDGES PURSUANT TO TITLE 28 USC §2284?

   YES    (NO)

7. DO ALL OF THE PARTIES IN THIS ACTION, EXCLUDING GOVERNMENTAL AGENCIES OF THE UNITED STATES AND THE COMMONWEALTH OF MASSACHUSETTS ("GOVERNMENTAL AGENCIES"), RESIDING IN MASSACHUSETTS RESIDE IN THE SAME DIVISION? - (SEE LOCAL RULE 40.1(D)).

   (YES)    NO

   A.  IF YES, IN WHICH DIVISION DO ALL OF THE NON-GOVERNMENTAL PARTIES RESIDE?

       (EASTERN DIVISION)    CENTRAL DIVISION    WESTERN DIVISION

   B.  IF NO, IN WHICH DIVISION DO THE MAJORITY OF THE PLAINTIFFS OR THE ONLY PARTIES, EXCLUDING GOVERNMENTAL AGENCIES, RESIDING IN MASSACHUSETTS RESIDE?

       EASTERN DIVISION    CENTRAL DIVISION    WESTERN DIVISION

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME __George F. Gormley__  __George F Gormley P.C.__
ADDRESS __655 Summer Street Boston MA 02210__
TELEPHONE NO. __617 478 2750__

(Cover sheet local.wpd - 11/27/00)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Paul Davis
715 East Street
Mansfield, MA 02048

## DEFENDANTS
Andrea Cabral, Sheriff of Suffolk County,
Suffolk County Sheriff's Department,
Suffolk County

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF: Bristol
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT: Suffolk
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
George F. Gormley 617-478-2750
George F. Gormley, P.C.
755 Summer St
Boston, MA 02210

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)
- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [X] 3 Federal Question (U.S. Government Not a Party)
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)
- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability

**TORTS - PERSONAL INJURY**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

**TORTS - PERSONAL INJURY**
- ☐ 362 Personal Injury – Med. Malpractice
- ☐ 365 Personal Injury – Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/Accommodations
- [X] 444 Welfare
- [X] 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence
- HABEAS CORPUS:
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**FORFEITURE/PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt. Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS – Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900 Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions

## VI. CAUSE OF ACTION
(CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

42 U.S.C. §1983: Damages for termination of plaintiff's employment for testifying about excessive force used by guards against inmates in this United States District Court. Violation of G.L. c.149 §185 + G.L. c.12 §11H+11I

## VII. REQUESTED IN COMPLAINT:
CHECK IF THIS IS A CLASS ACTION ☐ UNDER F.R.C.P. 23
DEMAND $ 2,000,000.00
CHECK YES only if demanded in complaint:
JURY DEMAND: [X] YES ☐ NO

## VIII. RELATED CASE(S) IF ANY
(See instructions)
JUDGE _____ DOCKET NUMBER _____

DATE: 08-25-04
SIGNATURE OF ATTORNEY OF RECORD: George F. Gormley

FOR OFFICE USE ONLY

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____