UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PAUL DAVIS, ) | |
| ) | |
| Plaintiff ) | |
| ) | Civil Action No. 04-11851-WGY |
| v. ) | |
| ) | |
| SUFFOLK COUNTY, SUFFOLK ) | |
| COUNTY SHERIFF'S ) | |
| DEPARTMENT AND ANDREA ) | |
| CABRAL (in her official capacity), ) | |
| ) | |
| Defendants ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE PLAINTIFF'S COMPLAINT

### I.   INTRODUCTION

The Plaintiff is a former jail officer who was terminated after *admitting to* numerous instances of submitting false reports concerning the use of excessive force against inmates; lying to supervisors concerning the use of excessive force against inmates; lying to Sheriff's Department investigators about the use of excessive force against inmates; and generally taking affirmative steps to cover up the excessive use of force against inmates that he personally witnessed at the hands of other jail officers.  Each of the Plaintiff's *admitted* acts and omissions is a clear violation of department policy, and is completely at odds with the Department's two fold mission – and a jail officer's primary duty – to provide for the CARE and CUSTODY of inmates.

The Plaintiff brought suit against Sheriff Andrea Cabral (in her official capacity), Suffolk County Sheriff's Department, and Suffolk County.  The Complaint contains four counts:  Count I (alleged violation of M.G.L. c. 149 § 185) against Defendants Suffolk County and the Suffolk

County Sheriff's Department; Count II (alleged violation of 42 U.S.C. § 1983) against all defendants; Count III (alleged termination in violation of public policy) against Defendants Suffolk County and the Suffolk County Sheriff's Department; and Count IV (alleged violation of M.G.L. c. 12 §§ 11H and 11I) against all defendants.

As will be discussed in detail below, all of the Plaintiff's claims should be dismissed. Neither the Massachusetts Whistleblower Statute nor the First Amendment of the United States Constitution was enacted to protect an employee from the consequences of his own misconduct. The plaintiff was terminated for the very offenses he admittedly committed. The fact that he ultimately cooperated with authorities and testified with a proffer agreement that afforded him protection from prosecution does not insulate him from termination for egregious violations of department policy and his sworn oath of office. Counts I and II should therefore be dismissed.

Counts III and IV must be dismissed based on the exclusivity provision of the Massachusetts Whistleblower Statute. Count IV must be dismissed for the additional reasons that a municipal entity is not a person within the meaning of the statute, the theory of respondeat superior is not applicable to actions under the Massachusetts Civil Rights Act, and the Defendants took no actions that could be construed as threats, intimidation or coercion within the meaning of the statute.

**II.    FACTS**

Paul Davis was employed as a jail officer at the Nashua Street Jail. He witnessed numerous instances of excessive force against four detainees in 1998 and 1999 during the course of his duties. (Complaint ¶¶ 18-19). Mr. Davis provided false reports to the Suffolk County Sheriff's Department concerning each of these instances. Three of his false reports were in writing, and a fourth was made orally to a Department investigator who was looking into one of

the instances of excessive force Davis witnessed. (Complaint ¶¶ 20-21). He admits to excluding from his report to this investigator "any improper actions by his fellow officers or his supervisors" and stated that he "exaggerated the actions of the inmate either in answering the investigator's questions or in completing a report made after the interview done at the investigator's specific direction." (Complaint ¶ 21).

It was not until Mr. Davis was approached by the Federal Bureau of Investigation and subpoenaed to testify before a grand jury that he truthfully recounted the numerous policy violations he had witnessed (excessive force) and participated in (false reports and lying to investigators). In March of 2003, Mr. Davis testified in a criminal trial in United States District Court for the District of Massachusetts, a case brought against a number of jail officers and mid-level supervisors from the Nashua Street Jail for the use of excessive force against detainees at the Jail and obstruction of justice. (Complaint ¶28). During his testimony, Mr. Davis admitted to "having participated with others, including the defendants, in falsifying reports and lying to SID investigators to cover up the incidents of excessive force that he witnessed."[1] Id. In a letter to the Sheriff concerning Davis' role in the trial and his cooperation with the trial team, United States Attorney Michael Sullivan stated that "[W]e certainly understand that you **must** take disciplinary administrative action against Deputy Davis…" Id. (emphasis added).

Subsequent to the criminal trial, Davis was suspended from the Department and charged with numerous violations of Department policy based on his admissions of making numerous false reports and lying to investigators. (Complaint ¶ 36). Davis was terminated on July 15, 2003. A complete copy of his termination notice is attached hereto as Exhibit 1.[2]

---

[1] This is according to United States Attorney Michael Sullivan.
[2] As ¶ 36 of the Complaint only quotes a portion of the letter, a copy of the entire letter is attached hereto for the purposes of completeness.

The Complaint cites to the Report of the Special Commission on the Suffolk County Sheriff's Department dated October 15, 2002 (the Stern Report) for the proposition that a "code of silence" existed at the department, and that the Commission recommended the department should attempt to penetrate such code. (Complaint ¶¶ 33-34).[3] The Complaint also cited one example of a former corrections officer at the House of Correction who alleged retaliation for breaking a code of silence after allegedly reporting that a co-worker was playing cards with an inmate.[4] (Complaint ¶¶ 13-16).

## III.  ARGUMENT

A complaint should be dismissed if the Plaintiff can prove no set of facts that would entitle him to the relief sought.  "In appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of her claim

---

[3] Although Defendants do not concede the relevance of excerpts from this report, for the purposes of this motion and for the sake of completeness, they state that the statements cited by the plaintiff should at least be placed in their proper context. Recommendation No. 8 on pages 70-71 of the Stern Report states:
   The Department should attempt to penetrate the existing code of silence at every turn.

   The Department should emphasize at the earliest point in training and orientation for new employees (not just uniformed staff) the difference between loyalty to the department and loyalty to their co-workers.  **It must be emphatically stated that while loyalty to co-workers can be a desirable trait, it ceases to be a good thing when it extends to covering up a misfeasance and malfeasance by falsifying reports, lying to or refusing to cooperate with supervisors and other investigators, and simply keeping silent when the information needs to be brought to the fore.**
   …
   Although the goal is for staff to recognize the harm that misbehavior, illegal actions, or policy violations can cause the institution as a whole and therefore to be preventative, the disciplinary consequences of participating in a code of silence must be emphasized as well.  For example, there could be reference to the disciplinary action recently taken against an officer who said that he would not provide information even if he did know something about the situation being investigated.  It should also be emphasized that consequences for minor transgressions, if admitted to supervisors at an early stage, will be geared to corrected action and counseling, whereas the potential harm and consequences will be far greater if the issue is not dealt with early on.  The Department must ensure that employees who do come forward with information are fully protected from retaliation from other officers and are supported by the administration…. (emphasis added)

[4] The case plaintiff references is Baron v. Hickey et al, United States District Court, C.A. No. 01-10143-PBS, has been appealed.  It is currently pending before the First Circuit Court of Appeals as Case No. 03-2718.  Among the issues being appealed is whether the plaintiff ever broke an alleged "code of silence" in the first place.

4

which would entitle her to relief." Nader v. Citorn, 372 Mass. 96, 97 (1977) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

> A. **The Massachusetts Whistleblower Statute Does Not Protect Davis From The Consequences Of His Own Misconduct.**

Having admittedly submitted numerous false reports relating to instances of inmate abuse that he has witnessed, and having admittedly lied to department investigators looking into certain of these instances of abuse, misconduct that clearly violates Sheriff's Department policy, the plaintiff seeks refuge from the just and inevitable consequences of his misconduct in the harbor of the Massachusetts Whistleblower Statute. Plaintiff seeks this unwarranted protection because he promised to tell the truth to the FBI "when [he] was asked about certain of these incidents which occurred at the jail." He also seeks protection under this statute, which was enacted to encourage individuals to come forward with information, based in part on a letter from the United States Attorney that was part of a deal made with the plaintiff to provide him protection from prosecution for his own misconduct. This letter on which the plaintiff relies, recited in his complaint at ¶ 28, states that the United States Attorney recognized the fact that the Sheriff "must" discipline Davis for his misconduct (falsifying reports and lying to SID investigators to cover up the incidents of excessive force that he witnessed). The instant case, therefore, is a dispute about the level of discipline actually imposed. Defendants suggest that this is not the proper forum to determine the appropriate disciplinary sanction when an employee has admitted to violating numerous policies of the employer.[5] In any event, the plaintiff did not come forward

---

[5] If the plaintiff believed that there was not just cause to discipline him, he should have resorted to whatever administrative remedies were available to challenge that decision. See, e.g. Chapter 135 of the Acts of 1960, a copy of which was provided to the plaintiff upon his termination (See Exhibit 1 hereto):

Section 1. Any person employed in the Suffolk County Jail in the office or position of … jail officer … whose office or position is not classified under Chapter thirty-one of the General Laws, and who has held such office or position for not less than seven years, shall not be involuntarily separated from such office or position

with information, but rather did all he could to prevent it from being detected until he was ultimately confronted and questioned by the FBI. Such self preservation in the midst of a federal criminal investigation does not transform the plaintiff from a participant and abettor in the unlawful activity to a benevolent whistleblower deserving of protection from the necessary consequences of his own misconduct.

Courts have recognized that an employment decision involving an employee who has engaged in some form of protected activity, including activities under whistleblower protection statutes, will not subject the employer to a retaliation claim if it can establish that it would have taken the same action in the absence of the protected activity. See, e.g. Watson v. Department of Justice, 64 F.3d 1524 (Fed.Cir. 1995) (termination of border patrol agent upheld by the Court where the employee was terminated subsequent to his report about the unlawful actions of a co-worker, where the report against the co-worker revealed the employee's own violations of policy, which included his failure to timely report the misconduct he witnessed). See also Crawford-El v. Britton, 523 U.S. 574, 118 S.Ct. 1584 (1998) ("When a public employee shows that protected [conduct] was a 'motivating factor' in an adverse employment decision, the employer still prevails by showing that it would have reached the same decision in the absence of the protected conduct."). This is the so-called *Mt. Healthy* defense. See Mt. Healthy City Sch. Dist. Bd. Of Educ. V. Doyle, 429 U.S. 274, 97 S.Ct. 568 (1977).

The plaintiff in this case was terminated for the very policy violations he acknowledged having committed. A review of his termination notice makes no mention of any public statements made by the plaintiff, but focuses instead on the specific violations of department policy the plaintiff was determined to have committed. He was fired for submitting false reports,

---

except subject to and in accordance with the provisions of sections forty-three and forty-five of said chapter thirty-one to the same extent as if the said office or position were classified under said chapter. …

6

an infraction Davis does not dispute that he committed. He was fired for lying to his supervisors, another infraction he concedes he committed. Davis was also fired for lying to department investigators looking into the allegations of excessive force that Davis witnessed, yet another infraction to which Davis acknowledges guilt.

There is absolutely nothing in the complaint to suggest that the plaintiff was treated differently than any other employee who *admittedly* engaged in the submission of numerous false reports about inmate abuse and who had admittedly lied to investigators looking into an incident of excessive force the employee had witnessed. There is nothing in the complaint to suggest that, given Davis' admitted violations of Department policy, he would not have been terminated but for his testimony about his misconduct and that of his cohorts during the course of the criminal trial in which he was protected from prosecution based on his testimony.

Paul Davis is not a whistleblower nor is he an individual for whom the statute was enacted to afford certain protections and incentives to come forward to report illegal or illicit activities. Davis was an active participant in lying and covering up numerous instances of inmate abuse at the Suffolk County Jail. He only "came forward", and that term is used very loosely, when confronted by federal agents during the course of an investigation into the very incidents Davis tried to cover up. He "came forward" not to bring any misconduct to light, but to protect himself from criminal prosecution. As such, Count I of the Complaint must be dismissed.

> **B.    The First Amendment Does Not Protect Davis From The Consequences Of His Misconduct, And Davis Is Unable To Show That Suffolk County Is The Moving Force Behind A Constitutional Deprivation.**

Paul Davis did not have a constitutional right to a job in which he stood idly by and watched colleagues physically abuse inmates at the Suffolk County Jail. He did not have a

7

constitutional right to falsify official reports or to lie to department investigators looking into the very incidents of abuse Davis so strenuously strove to shield from scrutiny. Paul Davis has admitted to committing these egregious violations – of his own oath as a sworn law enforcement officer and of the policies of the Suffolk County Sheriff's Department with which he was required to comply. The fact that his admissions were aired during the course of a public trial does not in any way protect him from the consequences of his shameful actions and inactions.

The plaintiff relies on carefully selected excerpts from the *Stern Report* to support his claim that his termination was, in some twisted way, actually perpetuating the so-called code of silence. The excerpts that plaintiff chose to omit from the complaint, however, demonstrate the Commission's determination[6] that the misconduct in which the plaintiff engaged is exactly what the department needed to eliminate:

> It must be emphatically stated that while loyalty to co-workers can be a desirable trait, it ceases to be a good thing when it extends to covering up a misfeasance and malfeasance by falsifying reports, lying to or refusing to cooperate with supervisors and other investigators, and simply keeping silent when the information needs to be brought to the fore. (See footnote 3, *infra*).

The report went on to state that disciplinary action taken for minor transgressions should be dealt with by means of corrective action and counseling, if admitted to early in the proceedings, but that more severe discipline must otherwise be imposed. The plaintiff's transgressions in the instant case are certainly not minor, and he did not admit to them at the time of their occurrence or any time soon thereafter. As discussed above, not only did he not admit to his misconduct, but he falsified reports and lied to investigators when asked about it. The only "admissions" came when plaintiff was faced with possible criminal prosecution for his role in these sordid incidents.

---

[6] Defendants state again their position that they do not adopt the findings of the Commission, nor do they concede their relevance to this proceeding.

As discussed in Section B above, the plaintiff was not terminated for testifying about the excessive force he witnessed other jail officers inflict on detainees at the Suffolk County Jail. He was terminated for his own misconduct, about which he also testified. The First Amendment does not protect him from the necessary consequences of violating the policies of the Suffolk County Sheriff's Department. Count II of the Complaint should be dismissed for this reason.

Count II should be dismissed for the additional reason that the plaintiff cannot establish that an official custom, practice or policy was the driving force behind the deprivation of a constitutional right.

To prevail on a claim against a municipality under 42 U.S.C. § 1983, Plaintiff must show he was deprived of his constitutional rights through the application of an unambiguous official custom or policy. Manarite v. City of Springfield, 957 F2d 953 (1st Cir. 1992), *cert. denied*, 113 S.Ct.113 (1992). He must show that Suffolk County was a "moving force" behind the deprivation of the Plaintiff's constitutional rights. Kentucky v. Graham, 473 U.S. 159, 173 (1985). It is not enough to allege that the employees of the entity were the cause of the injury. The United States Supreme Court has established that municipalities cannot be held vicariously liable under 42 U.S.C. § 1983 for their employees' actions unless such actions were pursuant to official municipal policy and caused a constitutional tort. Monell, 436 U.S. 658 (1978), City of Oklahoma City v. Tuttle, 471 U.S. 808 (1985), Jett v. Dallas Independent School District, 491 U.S. 701 (1989), City of Canton v. Harris, 489 U.S. 378 (1989).

The Court's decision in Monell was based on the original language of § 1983:

> Any person who under color of any law, statute, ordinance, regulation, custom or usage of any state, shall subject or cause to be subjected any person…

This language imposes liability on a municipality that under color of some official policy causes an employee to violate another's constitutional rights. Monell, 436 U.S. at 690. Therefore, a

9

local government can be held liable under 42 U.S.C. § 1983 for employing a tort-feasor but only if the liability arises as a result of the municipality's own actions. Monell, 436 U.S. at 691.

The Supreme Court has consistently upheld their decision in Monell. In City of Canton, 489 U.S. 378 (1984), the court reiterated the standard set forth in Monell concerning municipal liability by declining to adopt a lessor standard of fault that would open municipalities up to unprecedented liability pursuant to § 1983. "In virtually every instance where a person has had his or her constitutional rights violated by a city employee, a § 1983 plaintiff will be able to point to something the city "could have done" to prevent the unfortunate incident…Thus, permitting cases against cities for their "failure to train" employees to go forward under § 1983 or a lesser standard of fault would result in de facto respondeat superior liability on municipalities – a result we rejected in Monell." Canton 489 U.S. at 391. Under the standard set out in Monell and reiterated in Canton, the Plaintiff, in order to maintain a § 1983 action against Suffolk County, must establish that:

1. The Defendant had deliberate and discernible policies and customs in place; and
2. The Defendant's customs and policies caused the employees of the Suffolk County Sheriff's Department to act with deliberate indifference.

To determine whether a custom or policy is in place for purposes of finding municipal liability, two requirements must be met: "First, the custom or practice must be attributable to the municipality. In other words, it must be so well settled and widespread that the policymaking officials of the municipality can be said to have either actual or constructive knowledge of it yet did nothing to end the practice. Second, the custom must have been the cause of and the moving force behind the deprivation of constitutional rights." Bordanaro v. McLeod, 871 F2d 1151, 1156 (1st. Cir. 1989) (Internal citations omitted).

Sheriff Cabral was appointed to serve the remainder of her predecessor's term in or about December of 2002, on the eve of a criminal trial against several former jail officers and supervisors, and in the wake of numerous allegations of mismanagement of that prior administration. Just three months after the Sheriff had been in office, the plaintiff testified as a witness in the above trial. He testified not only about the misconduct of others that he witnessed at the jail, but more importantly for the purposes of the instant case, about his own wrongdoing. He admitted to violations of Sheriff's Department policy that he had previously denied. He admitted to falsifying reports and lying to investigators. Immediately after these egregious violations were brought to the Department's attention, Davis was placed on administrative leave. A disciplinary hearing was subsequently held and he was terminated for his admitted wrongdoing.

Municipal liability does not attach unless a policy making official is aware of a widespread and settled policy or practice that causes a constitutional harm and does nothing to end the practice.[7] Just three months after assuming office Sheriff Cabral was confronted with *admissions* of a jail officer that he had falsified numerous reports and lied to investigators about instances of excessive force that he had witnessed. She did not sit idly by as Davis chose to do – she took action. She acted by terminating Davis, thereby sending a message to all staff that such misconduct and inaction by an employee will not be tolerated under her Administration. To the extent that there was any "practice" concerning a code of silence, the termination of Davis cannot be said to perpetuate it any way. It was a positive first step in telling her staff and the

---

[7] Once again, in the interests of completeness based on the plaintiff's repeated references to the document, the Stern Report documents numerous senior officials who also retired as of November 30, 2002: the Sheriff, the Special Sheriff, the Superintendent of the Jail and House of Correction, the Deputy Superintendent of the Sheriff's Investigation Division, the Training director and the Deputy Superintendent of Operations and Program Services at the Jail.

11

public at large that officers cannot engage in such misconduct and expect to retain their jobs. Count II must also be dismissed.

### C. Counts III and IV Must Be Dismissed Pursuant To The Waiver Provisions Of M.G.L. c. 149, § 185.

Counts III (Termination in Violation of Public Policy), and IV (State Civil Rights) of the plaintiff's Complaint set forth claims based upon the same conduct, e.g. a discharge, that plaintiff also alleges constitutes the core retaliation underlying his whistleblower claim set forth in Count I of his Complaint. The Whistleblower Statute specifically provides:

> Nothing in this section shall be deemed to diminish the rights, privileges or remedies of any employee under any other federal or state law or regulation, or under any collective bargaining agreement or employment contract**; except that the institution of a private action in accordance with subsection (d) shall be deemed a waiver by the plaintiff of the rights and remedies available to him, for the actions of the employer, under any other contract, collective bargaining agreement, state law, rule or regulation, or under common law.** M.G.L. c. 149, § 185 (emphasis added).

The scope of this waiver provision clearly bars a Plaintiff who files suit under the Whistleblower statute from simultaneously bringing any other claims that could be adjudicated substantively under the Whistleblower statute. See Bennett v. City of Holyoke, 230 F.Supp.2d 207, 220 (2002); Haddad v. Scanlon, 1999 Mass.Super. LEXIS 272. In Bennett, a former police sergeant of the Holyoke Police Department filed suit against the City of Holyoke and others alleging that his termination was in violation of the State Whistleblower Statue as well as other state law claims. The Court held as a matter of law that any of the plaintiff's state law claims against his employer, City of Holyoke, seeking damages for essentially the same conduct, i.e. unlawful discharge, were barred by the waiver provision of the Whistleblower statute. Only those claims that were distinct from his claim to recover for the retaliatory action were permissible.

12

Similarly, in the instant case, the plaintiff's allegations in Counts III and IV are based upon the same conduct, an allegedly unlawful discharge, which constitutes the core retaliatory conduct underlying his whistleblower claim in Count I of the Complaint. The plaintiff does not allege any conduct or claim that is distinct from his claim to recover for retaliatory action. Therefore his claims in Counts III and IV are barred by the waiver provision of M.G.L. c. 149, § 185 and must be dismissed.

**D.    The Plaintiff's Claims under the Massachusetts Civil Rights Act Must Be Dismissed Because Liability Cannot Be Based On the Theory Of Respondeat Superior, There Are No Allegations Of Threats, Intimidation Or Coercion By Defendants To This Action, And A Municipality Cannot Be Sued Under M.G.L. c. 12,§ 11I.**

To establish a claim under the Massachusetts Civil Rights Act (MCRA), a plaintiff must allege that "(1) her exercise or enjoyment of rights secured by the Constitution or laws of the United States, or rights secured by the constitution or laws of the commonwealth, has been interfered with, or attempted to be interfered with and (2) that the interference or attempted interference was by **threat, intimidation or coercion**." (emphasis added).  M.G.L. c. 12, § 11H, 11I.  See also, Sarvis v. Boston Safe Deposit and Trust Co., 47 Mass. App. Ct. 86 (1999); Appleton v. Town of Hudson, et al, 397 Mass. 812 (1986).  "Conclusory allegations, amounting to a summarization of M.G.L. c. 12 § 11I fail to state a claim." Hobson v. McLean Hosp. Corp., 402 Mass. 413, 417 (1988); Flesner v. Technical Communications Corp., 410 Mass. 805, 818 (1991).

The plaintiff's claim under the MCRA against Sheriff Andrea Cabral (in her official capacity) and Suffolk County must fail as a matter of law, since he has not alleged any conduct by them that could be considered a threat, intimidation or coercion. Bally v. Northeastern University, 403 Mass. 713, 717 (1989).  See also, Bell v. Mazza, 394 Mass. 176, 182-83 (1985).

A threat, intimidation or coercion is an essential element to a claim under the MCRA. Broderick v. Roache, 803 F.Supp. 480, 485 (D. Mass. 1992) (citing Layne v. Superintendent, Massachusetts Correctional Institution, 406 Mass. 156, 158 (1989)). To violate the MCRA, defendants must have done "something akin to duress which causes the victim to relinquish her rights." Broderick, 803 F.Supp. at 485, quoting Butler v. RMS Technologies, Inc., 741 F.Supp. 1008, 1011 (D.Mass. 1990). The Supreme Judicial Court has defined threats, intimidation, and coercion as follows:

> "Threat" in this context involves the intentional exertion of pressure to make another fearful or apprehensive of injury or harm. "Intimidation" involves putting in fear for the purpose of compelling or deterring conduct. [We accept] a definition of coercion from Webster's New International Dictionary at 519 (2d ed. 1959): "the application to another of such force, either physical or moral, as to constrain him to do against his will something he would not otherwise have done."

Bennett v. City of Holyoke, 230 F.Supp.2d 207,228 (2002) quoting from Planned Parenthood League of Mass., Inc. v. Blake, 417 Mass. 467 (1994), cert. denied, 513 U.S. 868; see Carvalho v. Town of Westport, 140 F.Supp.2d 95, 100-01 (D.Mass. 2001) ("[T]he Supreme Judicial Court has suggested that a showing of an 'actual or potential physical confrontation accompanied by a threat of harm' is a required element of a claim under the Act.").

The plaintiff has not alleged any conduct by Sheriff Andrea Cabral or Suffolk County that could be considered a threat, intimidation or coercion as defined by the Supreme Judicial Court. The Plaintiff simply alleges that he was terminated from his job. There are no allegations whatsoever of any actual or potential physical confrontation accompanied by a threat of harm between the plaintiff and any of the Defendants. Although Count IV of the plaintiff's Complaint contains conclusory language, amounting to a summarization of M.G.L. c. 12§ 11I, (Complaint ¶ 60) there are no factual allegations to support a claim of threats, intimidation or coercion against Sheriff Andrea Cabral and Suffolk County. Accordingly the plaintiff's MCRA claims against

14

Sheriff Andrea Cabral and Suffolk County must be dismissed.  See, Bennett v. City of Holyoke, supra.

Additionally, the Suffolk County Sheriff and Suffolk County cannot be held vicariously liable under the doctrine of respondeat superior for the alleged actions of its employees.  The courts have consistently held that the doctrine of respondeat superior does not apply to an action brought under the MCRA.  See, Raymond v. City of Worcester, 142 F.Supp. 2d.145, 148-149 (D. Mass. 2001) ("municipalities cannot be sued under the Massachusetts Civil Right Act" and "the MCRA does not permit vicarious liability claims against municipalities."); Chaabouni v. City of Boston, 133 F.Supp. 2d 93, 103 (D. Mass. 2001); French v. United Parcel Service, 2 F. Supp. 2d 128, 133 (D. Mass. 1998); Broderick, 803 F.Supp. at 484; Vicarelli v. Business Intern, Inc., 973 F.Supp. 241 (D. Mass. 1997); Armstrong v. Lamy, 938 F.Supp. 1018 (D. Mass. 1996)

There is no doubt that Count IV must also be dismissed because it is brought only against a municipal entity and against the Sheriff in her official capacity only.  In McCarthy v. Szostkiewicz, 188 F.Supp.2d 64, 71-72 (D.Mass. 2002), this Court stated

> **It is now clear that "under Massachusetts law, a municipality cannot be sued under the MCRA."** Kelley v. LaForce, 279F.3d 129, 139 n. 8 (1st Cir. 2002). See also LeBeau v. Town of Spencer, 167 F.Supp.2d 449, 455 (D.Mass. 2001) (same); Metivier v. Town of Grafton, 148 F.Supp.2d 98, 102 (D.Mass. 2001) (same).  The Appeals Court of Massachusetts has recently concluded that "a municipality is not a 'person' covered by the Massachusetts Civil Rights Act…." Howcraft v. City of Peabody, 51 Mass.App.Ct. 573, 591-592, 747 N.E.2d 729 (2001). (emphasis added).

The claim brought against Sheriff Cabral in her official capacity is just another way of bringing the claim against the municipal entity.  Fletcher v. Szostkiewicz, 190 F.Supp.2d 217, 230 (D.Mass. 2001) (claim under the Massachusetts Civil Rights Act against the Mayor in his

15

official capacity dismissed as a claim against the city, which is not a person within the meaning of the MCRA.).

For all the reasons stated above, Count IV must be dismissed as to all defendants.

**E.     All Counts Against the Suffolk County Sheriff's Department Must Be Dismissed Because The Sheriff's Department Is Not A Legal Entity Amenable To Suit.**

All counts against Defendant Suffolk County Sheriff's Department must be dismissed as the Sheriff's Department is not a proper party, amenable to suit. "The Suffolk County Sheriff's Department" is neither a governmental entity, a legal subdivision of Suffolk County, nor a body politic and corporate for the purposes of suit. See, Kargman v. Boston Water and Sewer Commission, 18 Mass.App.Ct. 51 (1984).[8] The Commonwealth's General Laws are barren of any enabling legislation giving it powers or duties. It simply has no legal status and can neither sue nor be sued. See Morrison v. Lennett, 415 Mass. 857, 859-60 (1993)(trust cannot be sued because it is not a legal entity).

Additionally, Suffolk County, and not the Suffolk County Sheriff's Department is the "public employer" within the meaning of M.G.L. c. 258 § 1. Individuals working at the Suffolk County House of Correction are employees of Suffolk County. Gordon v. Sheriff of Suffolk County, 411 Mass. 2238 (1991); see also M.G.L. c. 126 § 18. Suffolk County is the proper defendant. Consequently, all counts against the Suffolk County Sheriff's Department must be dismissed for failure to state a claim upon which relief can be granted.

---

[8] Although St. 1992, c. 343 s. § 5 amended c. 258 § 1 to include local water and sewer commissions as public employers, the Court has continued to utilize the Kargman analysis. See Lafayette Place Assoc. v. Boston Redevelopment Authority, 427 Mass. 509 (1998).

## IV. CONCLUSION

For all the foregoing reasons, the Defendants Sheriff Andrea Cabral, Suffolk County and the Suffolk County Sheriff's Department respectfully request that this Honorable Court grant their Motion To Dismiss.

                Respectfully submitted for all
                DEFENDANTS,
                By their attorney


                /s/_____
                James M. Davin, BBO # 566973
                Deputy General Counsel
                Suffolk County Sheriff's Dept.
                200 Nashua Street
                Boston, MA 02114
                (617) 989-6679