UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PAUL DAVIS,                              )
                                         )
        Plaintiff,                       )
                                         )          Civil Action No. 04-11851-WGY
v.                                       )
                                         )
SUFFOLK COUNTY, SUFFOLK                  )
COUNTY SHERIFF'S                         )
DEPARTMENT, AND ANDREA                   )
CABRAL (in her official capacity)        )
                                         )
        Defendants.                      )

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS THE COMPLAINT**

**I.      INTRODUCTION**

The Plaintiff is a former jail officer who was terminated on July 15, 2003.  Plaintiff alleges

in his Complaint, among other things, that he was terminated for breaking the unwritten "code of

silence" that existed among employees in the Suffolk County Sheriff's Department.  While it is true

that Plaintiff has admitted to violating written policies of the Department, Plaintiff states that his

superiors were both aware that he was violating these policies at the time he was doing so, and that

these superiors encouraged – and even directed – him to violate the policies.

The Plaintiff brought suit against Sheriff Andrea Cabral (in her official capacity), Suffolk

County Sheriff's Department, and Suffolk County.  The Complaint contains four counts: Count I

alleges that Suffolk County and the Suffolk County Sheriff's Department violated G.L. c. 149, § 185;

Count II alleges that all defendants violated 42 U.S.C. § 1983; Count III alleges that Suffolk County

and the Suffolk County Sheriff's Department terminated plaintiff in violation of public policy; and

Count IV alleges that all defendants violated G.L. c. 12 §§ 11H and 11I.

As will be discussed in detail below, the Court should deny Defendants' Motion to Dismiss on all counts. Defendants emphasize that neither the Massachusetts Whistleblower Statute nor the First Amendment of the United States Constitution was enacted to protect an employee from the consequences of his own misconduct. Defendants rely on the principle that an adverse employment decision involving an employee who has engaged in some form of protected activity, including activities under the whistleblower protection statutes, will not subject the employer to a retaliation claim if it can establish that it would have taken the same action in the absence of the protected activity. In the present case, however, Defendants will not be able to show that they "would have taken the same action in the absence of the protected activity" because they knew all along that Plaintiff was violating Department policy in this area and not only did they not terminate him for doing so, they encouraged it.

Mr. Davis' claims against Defendants are not subject to waiver under G.L. c. 149 § 185; therefore, Counts III and IV should not be dismissed on this ground. Further, Mr. Davis has sufficiently alleged threats, intimidation or coercion by Defendants to state a viable claim under the Massachusetts Civil Rights Act, G.L. c. 12, § 11I. Finally, contrary to Defendants' assertions, the Suffolk County Sheriff's Department is a legal entity amenable to suit.


## II.    FACTS

Paul Davis was a jail officer at the Nashua Street Jail until his termination on July 15, 2003. While employed as a jail officer, Mr. Davis was, like many employees, coerced into following the "code of silence" that was prevalent in the Department. On one (1) occasion in 1998 and on three (3) occasions in 1999, Mr. Davis, along with other officers in the Department, was a participant in

incidents involving the control of disruptive inmates within the House of Corrections.  In each of these incidents, physical force was used against the inmate or inmates.  Mr. Davis did not participate in the use of any excessive, illegal, or unauthorized physical force.  Mr. Davis did, however, write reports on three (3) occasions which omitted details of the incidents by falsely depicting the amount of force that was used or the reason for the use of force.  On each of these occasions, these reports were written at the direction of Mr. Davis' supervisor, who had personal knowledge of the entirety of the subject matter and who received the completed report, reviewed it, and approved it.  Often, Mr. Davis was told, by a superior with knowledge of the actual events that had taken place, that the false report he had written was a "good report."

On one (1) occasion, Mr. Davis was questioned by a Department investigator about his observations regarding several officers attempt to restrain an unruly inmate a week earlier.  Mr. Davis responded truthfully about his own involvement in the matter but followed the earlier directions of his supervisors and did not accurately report or include any improper actions by his fellow officers or his supervisors and exaggerated the actions of the inmate in either answering the investigator's questions or in completing a report made after the interview done at the investigator's specific direction.

Mr. Davis feared adverse job action by the Department, ostracization by his co-workers, and intimidation form his supervisors if he broke the "code of silence" and related these events he actually witnessed fully and completely in the reports filed at the direction of his superiors.  Despite these fears, however, Mr. Davis spoke truthfully and fully about these matters when asked about them by agents of the Federal Bureau of Investigation and later before a United States Grand Jury. Thereafter, on March 5 and 6, 2003, Mr. Davis testified in federal court in the trial of United States

v. Eric Donnelly, et al., about the criminal use of excessive force and obstruction of justice committed by jail lieutenants, deputy sheriffs, and guards. On March 7, 2003, Mr. Davis was placed on administrative leave; on May 2, 2003, Mr. Davis appeared at a disciplinary hearing and on July 15, 2003, he was notified that he was terminated.

## III.    ARGUMENT

In considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), this Court must take well-pled factual allegations in the Complaint as true and must make all reasonable inferences in favor of Mr. Davis. See Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993). Dismissal under Rule 12(b)(6) is not appropriate unless the Complaint, so viewed, presents no possible set of facts justifying recovery. See Cooperman v. Individual, Inc., 171 F.3d 43, 46 (1st Cir. 1999). Accordingly, "[i]f under any theory the [C]omplaint is 'sufficient to state a cause of action in accordance with the law, a motion to dismiss the [C]omplaint must be denied.'" Duncan v. Santaniello, 900 F. Supp. 547, 549 (D. Mass. 1995) (citing Knight v. Mills, 836 F. 2d 659, 664 (1st Cir. 1987)). As set forth in detail below, Mr. Davis has surpassed this minimal pleading hurdle with respect to all of his claims.

**A.    The Massachusetts Whistleblower Statute Does Protect Davis Because the Defendants Were Aware of all Aspects of his Conduct Well Before He Engaged in the Protected Activity Yet did not Terminate Him Until After he Engaged in the Protected Activity**

Defendants correctly state that an employment decision involving an employee who has engaged in some form of protected activity, including activities under the whistleblower protection statutes, will not subject the employer to a retaliation claim if it can establish that it would have taken

the same action in the absence of the protected activity. <u>See</u>, <u>e.g.</u>, <u>Watson v. Department of Justice</u>, 64 F.3d 1524 (Fed. Cir. 1995). Defendants argue that Mr. Davis was terminated for the "very policy violations he acknowledged having committed." Plaintiff responds, however, that not only did the sheriff's department know that he was submitting false reports and that he lied to department investigators, it also encouraged him to do so.

It should also be noted that Defendants make several mis-statements and mis-characterizations regarding Mr. Davis' role in coming forward and truthfully testifying regarding his knowledge of the excessive force used by department personnel. Contrary to the suggestion of the Defendants, Mr. Davis did not make a "deal" with the United States Attorney to provide him protection from prosecution. Rather, Mr. Davis agreed to truthfully provide information to the Federal Bureau of Investigation, which he then provided when questioned before the United States Grand Jury. Finally, Mr. Davis truthfully testified in the United States District Court. The letter written to Sheriff Cabral by United States Attorney Michael Sullivan on April 22, 2003 was written after Mr. Davis had testified truthfully – and after he was placed on administrative leave based on the fact that he came forward and exposed the criminal activity being committed by fellow department personnel. It was spontaneously written in recognition of Mr Davis' actions and not part of any promise, reward, inducement, or other "deal" as currently suggested by the Defendants. Mr. Davis did not have an immunity or proffer letter from the Government, nor was he otherwise "protected from prosecution" (as the Defendants suggest) by anything other than his truthful testimony. The crimes for which Mr. Davis could, realistically, have been prosecuted would have been obstruction of justice or perjury had he lied during his grand jury or trial testimony.

Defendants further argue that Mr. Davis' termination notice makes no mention of any public statements made by him, but focuses instead on the specific violations of department policy he was determined to have committed.  While the notice of termination may not contain reference to Mr. Davis' public statements, it should also be noted that it does not acknowledge that Mr. Davis testified on March 5 and 6, 2003 and was placed on administrative leave on March 7, 2003.  Further, while the actual termination notice does not refer to the public testimony given by Mr. Davis, the transcripts of his testimony were made part of the record at the disciplinary hearing that preceded his termination.  It is disingenuous for the Defendants to assert here that Mr. Davis' termination was not in any way related to his truthful testimony in the United States District Court.  To the contrary, Mr. Davis' statements to federal law enforcement officers, followed by his truthful testimony before the grand jury and at trial, were the very reason for his termination.

**B.    The First Amendment Protects Mr. Davis' Speech on a Matter of Public Concern, and he is Able to Show that Suffolk County is the Moving Force Behind the Deprivation of his Right to Freedom of Expression**

Mr. Davis clearly alleges in his Complaint that the statements he made which led to his retaliatory discharge touched on a matter of "public concern."  See Bennett v. City of Holyoke, 230 F. Supp.2d 207, 223 (D. Mass. 2002) (citing Pickering v. Bd. of Educ., 391 U.S. 563, 569 (1968)). While defendants emphasize that Mr. Davis "admitted to committing . . . egregious violations – of his own oath as a sworn law enforcement officer . . .," they cannot dispute that Mr. Davis' testimony in United States v. Eric Donnelly, et al. exposed incidents of excessive force being used by various department personnel with the knowledge and encouragement of the Department.  Mr. Davis' testimony clearly touched on a matter of public concern.  It is also significant to note that Mr. Davis'

truthful public testimony aided in the vindication of important federal interests: United States prosecutions of various named jail officers and supervisors under 18 U.S.C. §§ 241 and 242, 18 U.S.C. § 1512(b)(3), as well as for perjury in violation of 18 U.S.C. § 1623.

Under Pickering, the court must proceed in four steps. First, the court must consider whether Mr. Davis was speaking "as a citizen upon matters of public concern." Connick v. Myers, 461 U.S. 138, 147 (1983); Vickowski v. Hukowicz, 201 F. Supp. 2d 195, 206-07 (D. Mass. 2002). As set forth above, testimony about the use of excessive force by department guards is clearly a matter of public concern. Having established that Mr. Davis' speech was on a matter of public concern, the court must next "balance the strength of the employee's First Amendment interest, and any parallel public interest in the information . . . against the strength of the countervailing governmental interest in promoting efficient performance." O'Connor v. Steeves, 994 F.2d 905, 912 (1st Cir. 1993).

Third, Mr. Davis must show that the protected speech was a substantial or motivating factor in his discharge. O'Connor, 994 F.2d at 913. Defendants go to great pains to stress that Mr. Davis was discharged because he admitted that he had violated departmental policy by falsifying reports. The fact remains, however, that Mr. Davis testified on March 5 and 6, 2003, and was placed on administrative leave on March 7, 2003. Further, it is Mr. Davis' contention that Defendants not only knew that he had violated departmental policy by falsifying reports, but that he was encouraged to do so by his supervisors. While it is theoretically true that Mr. Davis could have been terminated for falsifying reports, he was not. Rather, action was taken against him only after he testified publicly about incidents of excessive force used against inmates.

Finally, the defendants must be given an opportunity "to show 'by a preponderance of the evidence that [they] would have reached the same decision . . . even in the absence of the protected

conduct.'" Id. (quoting Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1977)). As explained above, however, the defendants in this case cannot show that they would have terminated Mr. Davis even in the absence of his public testimony – because they were fully aware of his conduct at the time he was falsifying the reports and not only was he not disciplined for doing it, he was encouraged and even directed to engage in this conduct.

Defendants also argue that Count II should be dismissed because Mr. Davis cannot establish that an official custom, practice, or policy was the driving force behind the deprivation of a constitutional right.  It is Mr. Davis' contention, however, that the "code of silence" among law enforcement personnel was an official practice that was the driving force behind the deprivation of his right to freedom of expression.  This deprivation resulted in Mr. Davis' termination.

Municipal liability under 42 U.S.C. § 1983 lies only when a municipal policy or custom causes the constitutional deprivation alleged by the plaintiff.  See Manarite v. City of Springfield, et al., 957 F.2d 953 (1st Cir. 1992) (citing Canton v. Harris, 489 U.S. 378 (1989)).  Further, municipal liability cannot be based on respondeat superior.  See id. (citing Monell v. Department of Social Services, 436 U.S. 658 (1978)).

The Court in Monell noted that ". . . although the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments . . . may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels."  436 U.S. at 690-91.  The Monell court further quoted from Adickes v. S.H. Kress & Co., 398 U.S. 144, 167-68 (1970): "Congress included customs and usages [in § 1983] because of the persistent and widespread discriminatory

practices of state officials . . . . Although not authorized by written law, such practices of state officials could well be so permanent and well settled as to constitute a 'custom or usage' with the force of law." Monell, 436 U.S. at 691. In the present case, the "code of silence" was a governmental "custom" which had not received "formal approval" but was nonetheless very real. It was so permanent and well settled as to constitute a custom in the Sheriff's Department. Violating this code of silence – and exercising his First Amendment right to freedom of expression – cost Mr. Davis his job.

Mr. Davis has alleged sufficient facts regarding municipal liability and Defendants' Motion to Dismiss Count II should therefore be denied.

**C.    Mr. Davis' Claims Against Defendants are not Subject to Waiver Under G.L. c. 149 § 185**

Defendants improperly attempt to dismiss legitimate claims against it at this early stage of the litigation by arguing that subsection (f) of the Whistleblower Act (the so-called "waiver provision") somehow requires the dismissal now of Counts III (Termination in Violation of Public Policy) and IV (State Civil Rights). Subsection (f) discusses waiver of certain claims in the event a plaintiff brings a Whistleblower Act claim. See G.L. c. 149, § 185.

Contrary to Defendants' assertion that the "waiver" language in the Whistleblower Act "clearly" bars Mr. Davis' claims under Counts III and IV, the lone case cited by Suffolk County in support of its argument expressly recognized that '[v]ery little decisional law has illuminated the meaning and scope of [the Whistleblower Act's] waiver provision since the statute's passage." Bennett v. City of Holyoke, 230 F. Supp. 2d 207, 220 (D. Mass. 202), aff'd, 362 F.3d 1 (1st Cir.

9

2004). Moreover, <u>Bennett</u> expressly recognized that the Whistleblower Act was "obviously designed to broaden protection to vulnerable workers." <u>Id</u>. at 220-21.

The Defendants' interpretation of the Whistleblower Act would, in fact, narrow the protections available to plaintiffs, as it would prevent plaintiffs like Mr. Davis from developing the factual record prior to the dismissal of factually viable claims. Accordingly, dismissal of Counts III and IV at this preliminary stage of the litigation is premature and contradicts the intent behind the Act. In order to achieve efficacy of the Whistleblower Act's expanded protections, this Court should give Mr. Davis the opportunity to engage in discovery in order to assess his likelihood of prevailing on his claims under the Whistleblower's Act, as well as Counts III and IV. The Court may then re-entertain any waiver arguments at the summary judgment stage. Such a measure will not prejudice the Defendants in any manner and, in fact, will extend the protections to which Mr. Davis is entitled.

Even assuming, however, that Defendants were correct in arguing that Count III (Termination in Violation of Public Policy) should, after discovery and the ability to develop the facts, be dismissed, their argument for dismissal of Count IV (Violation of the Massachusetts Civil Rights Act) necessarily fails. As stated by Defendants, the standard for waiver espoused by the lone case cited is whether the challenged claims could be "adjudicated substantively" under the Whistleblower Act. <u>Bennett</u>, 230 F. Supp.2d at 221 (interpreting the waiver provision of the Whistleblower Act at <u>summary judgment</u> as applying only to claims for the same conduct that "constituted the core retaliation for the whistleblowing") (emphasis added). As such, even under <u>Bennett</u> claims involving conduct that is distinct from the specific adverse action that violated the Whistleblower Act – in this case, Mr. Davis' retaliatory termination – may be brought in conjunction with a claim under the Act.

**D.      Mr. Davis has Sufficiently Alleged Threats, Intimidation or Coercion by Defendants to State a Viable Claim Under the Massachusetts Civil Rights Act, G.L. c. 12, § 11I**

Defendants are incorrect in their contention that the Massachusetts Civil Rights Act (M.C.R.A.) Count should be dismissed because the Complaint has not alleged threats, intimidation, or coercion.  Further, defendants misstate the legal precedent when they suggest that this Count must be dismissed because there are no allegations of any actual or potential physical confrontation accompanied by a threat of harm between the plaintiff and any of the Defendants.  In Buster v. Moore, Inc., 438 Mass. 635 (2003), the SJC stated: "[W]e have recognized that coercion may take various forms, and we have not limited its scope to actual or attempted physical force."  The SJC further held that "in certain circumstances, economic coercion, standing alone, may be actionable under the act."  Id. at 648.

Several decisions prior to the Buster decision have stated that a "physicality" aspect is not a requirement to making an MCRA claim.  See, e.g., Swanset Dev. Corp. v. Taunton, 423 Mass. 390, 396 n. 11 (1996) (assuming "without deciding the point that coercion which does not involve force might violate the act"); Planned Parenthood League of Mass., Inc. v. Blake, 417 Mass. 467, 474, cert. denied, 515 U.S. 868 (1994) (stating that "[A]ctionable coercion is the application to another of such force, either physical **or moral**, as to constrain him to do against his will something he would not have otherwise done") (emphasis added); Redgrave v. Boston Symphony Orchestra, 399 Mass. 93 (1987) (characterized by the Court in Buster as involving coercion where one party deprives another of rights due under a contract); Lecrenski Bros. Inc., 312 F. Supp.2d 117, 122 (D. Mass. 2004) (holding that "economic coercion, at the very least, can be implied in the instant case"); Acciavatti v. Prof'l Servs. Group, Inc., 982 F. Supp. 69, 79 (D. Mass. 1997) (stating that "The defendants fired

11

[the plaintiff], thereby canceling a future economic relationship with him, because his speech negatively impacted them. The defendants' retaliatory behavior, therefore, constitutes the requisite 'intimidation, threat, or coercion' under the MCRA").

As the Supreme Judicial Court noted in Buster, "the history of the struggle for civil rights . . . shows all too clearly that **economic pressure** may be deployed in any number of commercial settings in the absence of actual or threatened physical force to coerce individuals to forgo that exercise of their secured rights." Buster, 438 Mass. at 647 (emphasis added). It is clear then that economic or moral force alone may constitute sufficient coercion under the MCRA.

In the present case, Mr. Davis alleges that he was economically and morally intimidated, threatened and / or coerced by Defendants. For example, Mr. Davis alleges that as an employee of the Suffolk County Sheriff's Department, he was coerced into following the "code of silence" because he was afraid of retribution and harassment by management and co-workers. Complaint ¶ 11. Mr. Davis alleges that his fear of retribution was justified, given the fact that Bruce Baron, another Department guard, was forced to resign in 1998 after reporting a supervisor for violating House of Correction rules. ¶ 13. Further, after Mr. Baron broke the "code of silence," the supervisor who he reported only received a three day suspension. ¶ 13. Additionally, the Department's Investigative Department did not look into Mr. Baron's reports of over 30 incidents of harassment by his co-workers and management, which occurred after Mr. Baron broke the "code of silence. ¶ 14. Mr. Davis therefore was economically intimidated by the acts of the Defendants, as he could see firsthand what would happen if he broke the "code of silence" and reported the incidents of excessive force that he witnessed – he would potentially lose his job, but only after being harassed and threatened by his co-workers.

The allegations set forth above more than sufficiently satisfy the liberal notice pleading standard required by Federal Rule 8(a) in asserting that Defendants "intimidated, threatened, and coerced" Mr. Davis in violation of the MCRA. Defendants' attempt to rely on Hobson v. McLean Hosp. Corp., 402 Mass. 413 (1998) as the pleading standard for an MCRA claim is legally incorrect, given that this action is pending in Federal Court. See Lecrenski Bros. Inc., 312 F. Supp.2d at 122-23 (rejecting Hobson and holding that "'state pleading requirements, so far as they are concerned with the degree of detail to be alleged, are irrelevant in federal court even as to claims arising under state law.'") (quoting Andresen v. Diorio, 349 F.3d 8, 17 (1st Cir. 2003)).

**E.     The Suffolk County Sheriff's Department is a Legal Entity Amenable to Suit**

The Sheriff's Department alleges that it is not a legal entity, has no legal status, and can neither sue nor be sued[1]. The Department fails to acknowledge, however, that it has been a party to several lawsuits in Massachusetts courts over the past few years, including at least one initiated by the Department. See, e.g., Connolly v. Suffolk County Sheriff's Dep't, 6 Mass. App. Ct. 187 (2004); Baron v. Hickey, Suffolk County Sheriff's Dep't, and Sheriff of Suffolk County, 292 F. Supp.2d 248 (D. Mass. 2003) (in which a jury award of $500,000 in damages against the Sheriff's Department was awarded to Mr. Baron); Suffolk County Sheriff's Dep't v. AFSCME Council 93, AFL-CIO, Local, 50 Mass. App. Ct. 473 (2001); Romanos v. Suffolk County Sheriff's Dep't, No. 94-00174, 1994 WL 879556 (Mass. Super. Ct. May 25, 1994). Moreover, a "legal entity" is defined as "[a]n entity, other than a natural person, who has sufficient existence in legal contemplation that it can

---

[1] The Department cites Morrison v. Lennett, 415 Mass. 857, 859-60 (1993) for the proposition that a "trust cannot be sued because it is not a legal entity." Plaintiff has no reason to dispute this assertion, as he has sued the Suffolk County Sheriff's Department, not a trust.

13

function legally, be sued or sue and make decisions through agents as in the case of corporations."

See BLACK'S LAW DICTIONARY 894 (6th ed. 1990).

The Sheriff's Department also argues that it is Suffolk County, not the Suffolk County Sheriff's Department, who is the "public employer" within the meaning of G.L. c. 258 § 1. The definition of "public employer" located in G.L. c. 258 § 1[2], however, includes (in relevant part) "the commonwealth and any county, city, town, educational collaborative, or district . . . .**and any department**, office, commission, committee, council, board, division, bureau, institution, agency or authority thereof . . . **which exercises direction and control over the public employee** . . ." (emphasis added). The Sheriff's Department is clearly a department which exercised direction and control over Mr. Davis, as evidenced by the fact that the "Notice of Termination" attached to Defendants' Memorandum of Law as Exhibit 1 is on Suffolk County Sheriff's Department letterhead. It defies logic that the Suffolk County Sheriff's Department could terminate Mr. Davis' employment if, in fact, it was not Mr. Davis' employer.

---

[2] The definition of "public employer" located at G.L. c. 258 § 1 reads, in its entirety: "the commonwealth and any county, city, town, educational collaborative, or district, including any public health district or joint district or regional health district or regional health board established pursuant to the provisions of section twenty-seven A or twenty-seven B of chapter one hundred and eleven, and any department, office, commission, committee, council, board, division, bureau, institution, agency or authority thereof including a local water and sewer commission including a municipal gas or electric plant, a municipal lighting plant or cooperative which operates a telecommunications system pursuant to section 47E of chapter 164, department, board and commission, which exercises direction and control over the public employee, but not a private contractor with any such public employer, the Massachusetts Bay Transportation Authority, the Massachusetts Port Authority, the Massachusetts Turnpike Authority, or any other independent body politic and corporate. With respect to public employees of a school committee of a city or town, the public employer for the purposes of this chapter shall be deemed to be said respective city or town.

## IV. CONCLUSION

Plaintiff Paul Davis respectfully requests that this Court deny the Motion to Dismiss in its entirety, with prejudice, award him fees and costs incurred in connection with this Opposition, and award all other relief this Court deems proper.

## REQUEST FOR ORAL ARGUMENT

Plaintiff Paul Davis respectfully requests oral argument on Defendants' Motion to Dismiss.

Respectfully submitted,
**PAUL DAVIS**
By his attorneys,

/s Christie M. Charles
_____
George F. Gormley (BBO# 204140)
Christie M. Charles (BBO# 646995)
*George F. Gormley, P.C.*
655 Summer Street
Boston, MA 02210
(617) 478-2750

**Dated:** December 1, 2004