UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| PAUL DAVIS,  )<br>)<br>Plaintiff  )<br>)<br>v.  )<br>)<br>SUFFOLK COUNTY, AND  )<br>ANDREA CABRAL (in her official  )<br>capacity),  )<br>)<br>Defendants  )  | Civil Action No. 04-11851-WGY |

## AFFIDAVIT OF ANDREA J. CABRAL

I, Andrea J. Cabral, being duly sworn do hereby depose and state:

1. My name is Andrea J. Cabral and I am the Sheriff of Suffolk County.

2. I was initially appointed Sheriff by Governor Jane Swift to serve the remainder of Sheriff Richard J. Rouse's term. I was sworn into office on November 29, 2002. I was elected to a full six-year term in November of 2004.

3. I had previously worked as a prosecutor in the Middlesex County District Attorney's Office, the Suffolk County District Attorney's Office and the Commonwealth of Massachusetts Office of the Attorney General for approximately sixteen years.

4. Prior to assuming office in 2002, I read a document entitled Report of the Special Commission – the so-called Stern Commission Report. It was my understanding that this Commission had reviewed certain areas of the Suffolk County Sheriff's Department's operations and had made a number of recommendations for improvements.

5. Mindful of the need to be flexible, practical and work within the parameters of the Department's budget, I chose to use the Stern Commission as a blueprint for change as I began my first term as Sheriff.

6. Within the 77-page document, the Commission references a "code of silence" within the Department as it relates to internal investigations and a reluctance by staff to report misconduct by other staff.

7. When I began as Sheriff in 2002, I was aware that a number of jail officers had been federally indicted and were facing trial for civil rights violations and obstruction of justice relating to alleged abuse of detainees at the Nashua Street Jail. The alleged misconduct occurred long before my tenure as Sheriff commenced.

8. I was aware generally that some employees had been called to testify before the federal grand jury and that some were to testify in the criminal trial, which began in March of 2003 (USA v. Donnelly et al).

9. Prior to March of 2003 I was not aware that Paul Davis had regularly covered-up instances of excessive force used by other officers against detainees or that he had provided false reports to the Sheriff's Department.

10. Subsequent to the trial, my staff reviewed transcripts of many employees' testimony from this trial to determine what, if any, policy violations could be supported. They took this action after it had been reported that there had been certain admissions made by officers during the course of the trial.

11. To the best of my recollection, my staff reviewed transcripts of testimony involving Thomas Bethune, William Benson, Brian Murphy and Paul Davis. There may have been others, which I cannot presently recall.

12. On or about April 23, 2003, I received two letters from United States Attorney Michael Sullivan, one on behalf of Paul Davis and one on behalf of Brian Murphy. True copies of the letters are attached to Defendants' Statement of Undisputed Material Facts as Exhibits 12 and 13, respectively.

13. I personally reviewed the trial testimony of Paul Davis and Brian Murphy after being informed that they had admitted to violating numerous department policies.

14. I directed Paul Davis and Brian Murphy be suspended and charged with violating several department policies relating to the use of force and the writing of reports. This decision was not based on the fact that they had testified, but rather upon their admitted misconduct that had previously been concealed from the Department.

15. Disciplinary hearings were held for Paul Davis and for Brian Murphy.

16. Subsequent to Paul Davis' disciplinary hearing, I received written findings of fact from Hearing Officer Elizabeth Keeley. A copy of these findings is attached to Defendants' Statement of Undisputed Material Facts as Exhibit 14.

17. I accepted the Hearing Officer's findings relative to Paul Davis and determined that termination was necessary given the egregious nature of the numerous violations of policy to which Paul Davis admitted.

18. Paul Davis could not quantify how many false reports he had submitted over the years. He could not state that it had been fewer than 100 reports, he did nothing to intervene as he watched officers beat detainees and he consistently covered up even the slightest officer misconduct over the entirety of his career; He only "came forward" when he likely faced federal indictment for his own role in the beatings of detainees and/or their subsequent cover-up. Even in his first appearance before the grand jury, Paul Davis continued to lie and did not provide more truthful information until after he got a proffer agreement.

19. In my opinion, Paul Davis was the antithesis of what a good correction officer should be. His termination had absolutely nothing to do with his status as an individual who allegedly cooperated with the government and testified at trial. It was not the fact that he testified, but the egregious misconduct about which he testified, that led to my decision.

20. I am also familiar with the discipline imposed upon Jail Officer Brian Murphy. Like Paul Davis, Brian Murphy testified at trial about his and others' misconduct relative to the assault of detainee Nikolas Dais at the Nashua Street Jail. Based upon my review of the relevant portion of the trial transcript, Officer Murphy testified that two other jail officers assaulted a detainee in his cell in the jail's medical unit, and that they falsified their reports about the incident. During the assault, Officer Murphy was in the control booth, and, upon seeing the assault, immediately called for a SERT team to respond to the unit. Officer Murphy acknowledged that he wrote a false report in an attempt to cover up the incident. He also lied to SID when questioned about the incident. Officer Murphy admitted that he initially lied to FBI agents when questioned about the incident a year later, but subsequently cooperated with investigators and prosecutors before the grand jury and in testifying at trial.

21. Based on the transcripts I reviewed, it is my understanding that, unlike Paul Davis, Brian Murphy transgressed in a single incident and that, in alerting the SERT Team, took some action to mitigate harm to the detainee.

22. I determined that while Brian Murphy's actions were egregious, they were far less severe than Paul Davis'. In that regard, Brian Murphy had the potential to be salvaged as a correction officer if he agreed to the imposition of substantial discipline and to use his mistakes as a learning tool for other employees. It was imperative that he accept responsibility for his actions and make "restitution" to the Department by sharing his experience in staff training sessions. A true copy of the settlement agreement reached with Murphy and his union is attached to Defendants' Statement of Undisputed Material Facts as Exhibit 16.

23. Since assuming office in 2002, I have taken a number of steps to address the so-called "code of silence." I have completely reformed Department hiring and promotional practices and have completely restructured the training and investigation divisions. Political patronage has been eliminated from the hiring process; all candidates must successfully complete a comprehensive review that includes a lengthy written

    application, a panel interview, physical and academic testing, a criminal records check, a drug (hair) test and verification of all previous employment, personal references and residence(s.)  There are a number of hypothetical scenarios in the job application and the panel interview that deal with reporting officer misconduct.  Inappropriate responses to these questions immediately eliminate an applicant from further consideration.

24. Additionally, I personally interview all finalists for jail or correction officer positions.  A successful interview is the final requirement for all officer candidates and the final hiring decision is made by me.  To the best of my knowledge, I am the only Sheriff in the Commonwealth to undertake this task.  I spend anywhere from 60 – 90 minutes speaking with candidates who have made it past the initial screening mechanisms.  I candidly discuss with each of them my expectations, including my expectations about their own conduct and also about their obligation to report the misconduct of others.

25. I created the Department's first off-site Training Academy, which is staffed by certified trainers.  All recruits who successfully complete the hiring process must also successfully complete a 10-week training academy before starting work in the Department's units.  The training curriculum includes components dealing with personal responsibility and accountability, use of force continuum and the obligation to report and properly document incidents of staff misconduct.  New officers are probationary employees for the first 18 months and can be terminated for any reason during that time.  All veteran officers are required to undergo 40-hours per year of in-service training that includes training in these same areas.

26. The changes made to the Sheriff's Investigations Division (SID) – to the leadership, investigative process, qualifications and training of the investigators, investigative resources and the internal structure of SID – have had a tremendous impact on the Department's capacity to address employee misconduct.  It is now perceived internally to be a fair, professional and effective division.

27. Since assuming office in November of 2002, I have very consistently imposed severe discipline where I determined misconduct on behalf of jail or corrections officers.

28. I have terminated officers for numerous reasons which include introducing drugs or other contraband into the facility, using excessive force, having inappropriate contact with inmates, failing to report / the submission of false reports; and violating the department's substance abuse policy.  Many other employees have chosen to resign rather than face disciplinary action.

**Signed Under The Pains And Penalties Of Perjury This 14th Day Of September, 2005**

                                                              _____
                                                              **Andrea J. Cabral,**
                                                              **Sheriff of Suffolk County**