UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PAL DAVIS, )<br>)<br>    Plaintiff, )<br>) | Civil Action No. 04-11851-WGY |
| v. )<br>) | |
| SUFFOLK COUNTY AND )<br>ANDREA CABRAL )<br>(in her official capacity) )<br>) | |
|     Defendants. ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S OPPOSITION
TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

I.   INTRODUCTION

The Plaintiff is a former jail officer who was terminated on July 15, 2003.  Plaintiff alleges in his Complaint, among other things, that he was terminated for breaking the unwritten "code of silence" that existed among employees in the Suffolk County Sheriff's Department.  While it is true that Plaintiff has admitted to violating written policies of the Department, Plaintiff states that his superiors were both aware that he was violating these policies at the time he was doing so, and that these superiors encouraged – and even directed – him to violate the policies.

The Plaintiff brought suit against Sheriff Andrea Cabral (in her official capacity), Suffolk County Sheriff's Department, and Suffolk County.  The Complaint contains four counts: Count I alleges that Suffolk County and the Suffolk County Sheriff's Department violated G.L. c. 149, § 185; Count II alleges that all defendants violated 42 U.S.C. § 1983; Count III alleges that Suffolk County

and the Suffolk County Sheriff's Department terminated plaintiff in violation of public policy; and Count IV alleges that all defendants violated G.L. c. 12 §§ 11H and 11I. On Defendants' Motion to Dismiss, the Court merged the wrongful termination and the state "whistleblower" claim into one count, dismissed Count IV in its entirety, and also dismissed all claims against "Suffolk County Sheriff's Department" as it is not a legal entity amenable to suit. The motion was otherwise denied.

As will be discussed in detail below, the Court should deny Defendants' Motion for Summary Judgment in its entirety. Defendants emphasize that neither the Massachusetts Whistleblower Statute nor the First Amendment of the United States Constitution was enacted to protect an employee from the consequences of his own misconduct. Defendants argue that Mr. Davis cannot prove that his decision to testify in <u>United States v. Donnelly</u> was a substantial factor in Sheriff Cabral's decision to terminate him. As argued more fully below, plaintiff contends that the fact that Brian Murphy was not fired after testifying in <u>United States v. Donnelly</u> does not mean that there is no genuine issue of material fact as to whether or not Mr. Davis' testimony was a substantial factor in his termination. Further, there is a genuine issue of material fact as to whether or not Defendants "would have taken the same action in the absence of the protected activity" as it is Mr. Davis' position that Defendants knew all along that Plaintiff was violating Department policy in this area and not only did they not terminate him for doing so, they encouraged it.

II.    FACTS

Plaintiff relies on his Statement of Disputed Material Facts Pursuant to Local Rule 56.1, as well as any purely undisputed facts in Defendants' Statement, as well as the documents filed by both parties.

III.    ARGUMENT

As accurately set forth by Defendants, summary judgment is warranted if "after reviewing the facts in the light most favorable to the non-moving party, no genuine issues of material fact remain and the moving party is entitled to judgment as a matter of law." Putnam v. Town of Saugus, 365 F.Supp.2d 151, 166 (D. Mass. 2005). Further, the moving party has the "initial burden of production, which it can meet either by offering evidence to disprove an element of the plaintiff's case or by demonstrating an absence of evidence to support" the non-moving party's case. Id. It is plaintiff's position that Defendants cannot meet their initial burden; rather, Defendants rely on portions of admissions and self-serving statements made in Sheriff Cabral's Affidavit to "disprove" elements of Plaintiff's case. Summary Judgment should therefore be denied.

    A.    There Are Genuine Issues of Material Fact Raised by Plaintiff's First Amendment Claim that There is a Causal Link Between his Protected Speech and his Termination; Therefore, Summary Judgment as to Count II Must be Denied.

As Defendants correctly point out, in order to succeed on a claim of retaliation under the First Amendment, Mr. Davis must be able to establish that (1) he spoke on a matter of public concern (Connick v. Myers, 461 U.S. 138, 147-48 (1983)); (2) the public's interest outweighs the government's interest in promoting efficient performance of the public service (Pickering v. Board of Educ., 391 U.S. 563 (1968)); and (3) the protected activity was a substantial factor in an adverse employment decision (Mt. Healthy City School Dist. Bd. Educ. v. Doyle, 429 U.S. 274, 287 (1977)).

Defendants concede – after first maligning Mr. Davis – that providing testimony in a criminal trial is a matter of public concern. Defendants therefore necessarily concede that because Mr. Davis'

testimony related to violations of the civil rights of detainees, his speech is afforded even more First Amendment protection. Putnam v. Town of Saugus, 365 F.Supp.2d 151, 168 (D. Mass. 2005). It is worthy of note that Mr. Davis' speech vindicated an important federal interest – enforcement of the civil rights laws. Regarding the second prong of the analysis, Plaintiff maintains that Defendants did attempt to curtail his speech (and, for that matter, succeeded in silencing him by terminating his employment). However, Defendants have chosen to forgo making an argument relative to the balancing of interests of the public in hearing speech versus those of the Department in curtailing the speech in the interests of efficient operations.

Contrary to Defendants' contention, Mr. Davis has raised a genuine issue of material fact as to whether or not his testimony was a substantial factor in the Department's decision to fire him. While it may be true that Mr. Davis thought he was going to be disciplined for his misconduct[1], that does not change the fact that his superior officers were well aware of his misconduct all along – as they were both encouraging and directing him to engage in it. It also does not change the fact that Mr. Davis was first placed on administrative leave the very day after he testified in Federal Court.

1.  There is a Genuine Dispute as to Whether or Not Mr. Davis' Decision to Testify in United States v. Donnelly was a Substantial Factor in Sheriff Cabral's Decision to Terminate Him that is Properly Resolved by the Jury

Defendants argue that because Brian Murphy violated department policy by covering up the use of excessive force against a pre-trial detainee at the Nashua Street Jail, testified before the Grand

---

[1] Defendants state that "[t]he United States Attorney understood that Davis *had* to be disciplined." Plaintiff respectfully submits that what the United States Attorney did or did not "understand" has nothing whatsoever to do with whether or not Mr. Davis' termination was a result of his testimony in United States v. Donnelly.

Jury and at the trial of United States v. Donnelly, and was not fired for his actions, Mr. Davis cannot show that his testimony was a substantial factor in Sheriff Cabral's decision to terminate him. Defendants go to great pains to point out that Officer Murphy's wrongdoing "though egregious, related to a singular incident." Defendants also emphasize that Officer Murphy's "singular incident" of "egregious" wrongdoing is in contrast to Mr. Davis' "career" of "serial misconduct," which Defendants characterize as "reprehensible[2]."

It is plaintiff's position, however, that contrary to Sheriff Cabral's account of Officer Murphy's testimony regarding his actions in the Dais incident, Officer Murphy did not call for the SERT team while Officer Bailey and Officer Ross beat inmate Dais. Affidavit of Paul Davis, ¶ 6. In reality, Officer Bailey's "man down" alarm went off, and the SERT team was directed to respond

---

[2] Defendants note that Mr. Davis was unable to quantify how many false reports he had submitted over the course of the 12 years he worked for the Suffolk County Sheriff's Department, "reprehensibly stating that it could have been more than 100." In reality, however, what Mr. Davis was asked, at his disciplinary hearing, was as follows:

Q:   I'm asking you beyond the four that you testified to, how many others do you recall that you either witnessed, participated in, or filed a false report involving excessive use of force by yourself or any other officer on an inmate?

A:   I don't know how many.

Q:   Was it more than 10?

A:   It could have been more than 10. It could have been more than a hundred. I don't know.

Q:   It could have been more than a hundred times?

A:   I don't know. I'm just saying, I don't - -

Disciplinary Hearing Transcript, p. 128-129.

Mr. Davis' statement that he did not know how many times he witnessed, participated in, or filed a false report involving excessive force is not a substitute for affirmative evidence as to how many times these events did occur.

to the cell by central control. Id. Further, while it may be true that Officer Murphy only admitted to one incident of falsifying a report, Officer Murphy was not a member of the SERT team. ¶ 7. Officer Murphy worked as a line officer, and eventually worked in the booking room. Id. Officer Murphy therefore was only responsible for one particular area on a given shift, and was therefore only exposed to potential incidents with inmates in that one area. Id. As a member of the SERT team, on the other hand, Mr. Davis was responsible for the entire jail during any given shift, and could easily have to respond to as many as five (5) or six (6) incidents per shift. Id. Officer Murphy and Mr. Davis were therefore not similarly situated employees of the Sheriff's Department.

      Defendants categorize Mr. Davis' argument that his immediate supervisors were aware of his misconduct and encouraged it as a "weak attempt to hide" from the consequences of his actions, highlighting that Mr. Davis understood written Department policy and yet chose to violate that policy. Defendants' repeated characterizations of Mr. Davis as "weak" and "reprehensible," coupled with references to his actions as "shameful," however, does not alter the fact that during the 12 years that Mr. Davis worked as a corrections officer, the code of silence was pervasive. It also does not change the fact that unlike Lt. Sutherland, Lt. Donnelly, Officer Bailey, Officer Massuco, and Officer Nuzzo, Mr. Davis chose to come forward and admit his wrongdoing. Unlike these individuals, who Defendants point out no longer "remain employed at the Jail" – because, of course, they are incarcerated – Mr. Davis cooperated with law enforcement officials to bring to light the misconduct occurring at the Jail and put an end to the code of silence. Additionally, it is certainly worth noting that while Mr. Davis may have written false reports regarding incidents at the Jail, he did not ever – nor has he been accused of – used excessive force or physically assault an inmate. That certainly

distinguishes Mr. Davis from his fellow officers that Defendants note no longer "remain employed at the Jail."

      2.      There is a Genuine Dispute as to Whether or Not Suffolk County is the Moving Force Behind a Constitutional Deprivation That is Properly Resolved by the Jury

Defendants argue that Mr. Davis is unable to show that Suffolk County is the "moving force" behind a constitutional violation and therefore Summary Judgment is appropriate as to Count II. It is Mr. Davis' contention, however, that the "code of silence" among law enforcement personnel was an official practice that was the driving force behind the deprivation of his right to freedom of expression. This deprivation resulted in Mr. Davis' termination.

Municipal liability under 42 U.S.C. § 1983 lies only when a municipal policy or custom causes the constitutional deprivation alleged by the plaintiff. See Manarite v. City of Springfield, et al., 957 F.2d 953 (1st Cir. 1992) (citing Canton v. Harris, 489 U.S. 378 (1989)). Further, municipal liability cannot be based on respondeat superior. See id. (citing Monell v. Department of Social Services, 436 U.S. 658 (1978)).

The Court in Monell noted that ". . . although the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments . . . may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels." 436 U.S. at 690-91. The Monell court further quoted from Adickes v. S.H. Kress & Co., 398 U.S. 144, 167-68 (1970): "Congress included customs and usages [in § 1983] because of the persistent and widespread discriminatory practices of state officials . . . . Although not authorized by written law, such practices of state

officials could well be so permanent and well settled as to constitute a 'custom or usage' with the force of law." Monell, 436 U.S. at 691. In the present case, the "code of silence" was a governmental "custom" which had not received "formal approval" but was nonetheless very real. It was so permanent and well settled as to constitute a custom in the Sheriff's Department. Violating this code of silence – and exercising his First Amendment right to freedom of expression – cost Mr. Davis his job.

A genuine issue of material fact is in dispute as to municipal liability so that Defendants' Motion for Summary Judgment on Count II should be denied.

> B.  There is a Genuine Dispute as to Whether or not Mr. Davis was Terminated *Because* he Engaged in Protected Activity; Therefore, Summary Judgment Must be Denied as to Count I of the Complaint (Violation of Massachusetts Whistleblower Statute)

Defendants have accurately quoted the relevant portions of the Massachusetts Whistleblower statute, M.G.L. c. 149 § 185. What defendants do not acknowledge, however, is that Suffolk County Sheriff's Department Policy S-220 (Employee General Conduct), as it existed during Mr. Davis' 12 years of employment, expressly forbid "unauthorized release of confidential information by an employee." Section .04, entitled "Confidential Communications[3]," stated that removal of official

---

[3] S-220 provides, in section .04 ("Confidential Communications"):

- Discussion of the affairs of the department or regarding persons in custody is confidential and such discussion shall be limited to that which is necessary in the performance of an employee's duties, and such information shall be shared only with persons authorized.

- Employees shall not inappropriately intercede with persons not connected with the department, other than their attorney or union representatives, to influence or temper disciplinary action or other action by the department which affects any employee.

- All news statements or bulletins shall be released only by persons designated by the Sheriff. Any unauthorized release of confidential information by an employee shall constitute cause for disciplinary action. Official papers, reports or copies of same shall not be removed from the institution

papers, reports or copies of reports could not be removed from the institution without specific instruction or prior permission, and that "public speeches, lectures, or writings alluding in any way to affairs of the department must have prior approval of the Special Sheriff."

Contrary to defendants' characterization of this lawsuit, it is <u>not</u> a "dispute about the level of discipline imposed upon an employee." Rather, it is a dispute about whether or not the Sheriff terminated Mr. Davis in retaliation for the fact that he testified about inmate abuse and employee misconduct in <u>United States v. Donnelly</u>. While Mr. Davis cannot deny that he violated Suffolk County Sheriff's Department's <u>written</u> policies, there is a genuine issue of material fact as to whether or not he violated those written policies at the encouragement and direction of his superiors – and in keeping with the very real <u>unwritten</u> policies of the Department. To say that Mr. Davis was terminated because he admitted to violating Department is disingenuous – because Mr. Davis violated those policies at the express direction of his superior officers. The Sheriff's Department was not only aware that Mr. Davis was violating policy – it was instructing and encouraging him to do so. The fact that Mr. Davis was placed on administrative leave the very day after he testified in federal court is not mere coincidence.

Defendants argue that there is nothing in the summary judgment record to suggest that Mr. Davis was treated any differently "than any other employee who did not testify at trial but who ***admittedly*** engaged in the submission of numerous false reports about inmate abuse . . ." Mr. Davis disputes this contention, however. On information and belief, Kenneth Joyner testified before the Grand Jury but was not called as a government witness at the trial of <u>United States v. Donnelly</u>.

---

without specific instruction or prior permission frm the Superintendent. Violation of this rule may result in disciplinary action. Public speeches, lectures, or writings alluding in any way to affairs of the department must have the prior approval of the Special Sheriff.

9

Affidavit of Paul Davis, ¶ 10.  Officer Joyner was Mr. Davis' partner during the Milliken incident, and Mr. Davis believes that Officer Joyner was also directed by SID to write a report regarding the use of leg irons on inmate Milliken.  Id.  Presumably, Officer Joyner testified truthfully about that incident before the Grand Jury.  Id.  Officer Joyner did not testify publicly about his involvement in that incident, though; as a result, Officer Joyner is still employed by the Suffolk County Sheriff's Department.  Id.

Further, the Affidavit of Michael Harris, Superintendent of Human Resources, as well as Defendants Statement of Undisputed Facts, makes clear that the officers who were convicted at trial and sentenced to terms of imprisonment were either terminated or resigned[4].  Plaintiff contends that the other officers who engaged in the same conduct as he did were not "caught" – i.e. they were

---

[4] Specifically, the following officers were either terminated or resigned:

1. Former Lt. Eric Donnelly was terminated on December 28, 1999, and was sentenced to 46 months in prison (Defendants' Statement of Undisputed Facts ¶ 131-132) ;
2. Former Lt. Randall Sutherland resigned on February 27, 2003, and was sentenced to 10 months in prison (Defendants' Statement of Undisputed Facts ¶ 131-132);
3. Brian Bailey was terminated on April 22, 2003, and was sentenced to 41 months in prison (Defendants' Statement of Undisputed Facts ¶ 133-134);
4. Former jail officer Michael Ross resigned on May 22, 2000 (Defendants' Statement of Undisputed Facts ¶ 135);
5. Former jail officer Anthony Nuzzo resigned on June 26, 2002, and was sentenced to 15 months in prison (Defendants' Statement of Undisputed Facts ¶ 136);
6. Former jail officer Patrick Cook resigned on January 12, 2004 (Defendants' Statement of Undisputed Facts ¶ 137);
7. Jail Officer Thomas Bethune was reinstated after his acquittal at trial, and was suspended for 90 days without pay in September 2003 (Defendants' Statement of Undisputed Facts ¶ 138);
8. Former jail officer Melvin Massucco was terminated on March 12, 2003 and was sentenced to 26 months in prison (Defendants' Statement of Undisputed Facts ¶ 139);
9. Former jail officer Steve Brown resigned on December 15, 2003 (Defendants' Statement of Undisputed Facts ¶ 140).

neither indicted nor subpoenaed to testify before the Grand Jury. They therefore have not admitted their misconduct – and by keeping silent, they have kept their jobs.

Public Policy.

Defendants rely heavily on the recent Massachusetts Supreme Judicial Court decision in City of Boston v. Boston Police Patrolmen's Ass'n in support of their argument that Mr. Davis' termination is not a violation of public policy. See 443 Mass. 813, 824 N.E.2d 855 (2005). Unlike Mr. Davis, however, Officer DiSciullo did not just write false or misleading reports regarding fellow officers' misconduct. Rather, Officer DiSciullo falsely arrested two citizens who were merely double parked on a city street. See id. at 815. In addition to falsely arrested these two individuals, Officer DiSciullo had to be restrained from physically assaulting one of the arrestees, and then filed a false incident report and statement of criminal charges to cover up his behavior. See id. at 815. It does not appear that Officer DiSciullo ever admitted his wrongdoing – and he certainly did not testify about his own (and others') wrongdoing in a federal prosecution.

While it may be true that Mr. Davis' participation in misconduct at the Suffolk County jail "went to the heart of his responsibilities" as a corrections officer, Mr. Davis' actions occurred in a significantly different environment and atmosphere than Officer DiSciullo's did. The actions taken by Mr. Davis were "part and parcel of the institutional climate." Report of Professor Raymond Helgemoe ; see generally "Stern Commission Report." Mr. Davis' actions were not the rogue actions of one officer who took matters into his own hands (as, arguably, Officer DiSciullo did in City of Boston); rather, Mr. Davis prepared false reports at the direction of his superior officers – who certainly knew what he was doing, as they were encouraging him to do it. Mr. Davis did not

11

engage in any acts of physical violence against inmates.  Further, Mr. Davis subsequently spoke truthfully about these incidents to federal authorities in an attempt to do the right thing and comply with the law.  Terminating Mr. Davis for these truthful communications to outside law enforcement agencies is "counterproductive to the institution and serves only to allow and perpetuate more serious unlawful activity."  Report of Professor Raymond Helgemoe.  In other words, firing Mr. Davis for breaking the code-of-silence did nothing more than perpetuate the code of silence – which is clearly contrary to public policy.

IV.     CONCLUSION

For all of the foregoing reasons, Plaintiff Paul Davis respectfully requests that this Honorable Court deny Defendants' Motion for Summary Judgment in its entirety.

                                              Respectfully submitted,
                                              **PAUL DAVIS**
                                              By his attorneys,

                                              /s Christie M. Charles
                                              _____
                                              George F. Gormley (BBO # 204140)
                                              Christie M. Charles (BBO # 646995
                                              ***George F. Gormley, P.C.***
                                              655 Summer Street
                                              Boston, MA 02210
                                              (617) 478-2750

**Dated:**        September 29, 2005