UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| PAUL DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 04-11851-WGY |
| v. | ) | |
| | ) | |
| SUFFOLK COUNTY AND | ) | |
| ANDREA CABRAL | ) | |
| (in her official capacity) | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S STATEMENT OF DISPUTED MATERIAL FACTS
PURSUANT TO LOCAL RULE 56.1**

Pursuant to Local Rule 56.1, Plaintiff hereby submits the following Statement of Material

Facts in response to Defendants' "Statement of Undisputed Material Facts."

1.      Undisputed.

2.      Undisputed.

3.      Undisputed.

4.      Undisputed.

5.      Undisputed.

6.      Undisputed.

7.      Undisputed.

8.      Undisputed.

9.      Undisputed.

10.      Undisputed.

11.     Undisputed.

12.     Undisputed.

13.     Undisputed.

14.     Undisputed to the extent that Mr. Davis testified at his May 2, 2003 disciplinary hearing that he was trained a "certain way" as to the use of force, and that he further testified that he "knew the correct way to do it."  Mr. Davis also testified, however, that he used force the "correct way."  It is also significant to note that Mr. Davis has never been accused of using force incorrectly or in violation of department policy. **Exhibit A: Affidavit of Paul Davis, ¶ 3**; Defendants' Exhibit 2, p. 111, line 15.

15.     Undisputed.

16.     Undisputed – Mr. Davis received the Employee Policy Manual on or about February 20, 1991 (his first day as an employee of the Sheriff's Department) and received a revised version on or about August 4, 1996.   **Exhibit B: Plaintiff's Response to Request for Admissions** (Admission No. 1).

17.     Undisputed.

18.     Undisputed.

19.     Undisputed.

20.     Undisputed as Defendants' Exhibit 6 is a document which speaks for itself and the portion referred to has been accurately quoted.

21.     Undisputed.

22.     Undisputed.

23.     Undisputed.

24.     Undisputed as Defendants' Exhibit 7 is a document which speaks for itself and the portion referred to has been accurately quoted.

25.     Undisputed as Defendants' Exhibit 7 is a document which speaks for itself and the portion referred to has been accurately quoted.

26.     Undisputed as Defendants' Exhibit 7 is a document which speaks for itself and the portion referred to has been accurately quoted.

2

27.    Undisputed as Defendants' Exhibit 7 is a document which speaks for itself and the portion referred to has been accurately quoted.

28.    Undisputed.

29.    Disputed – While it is true that Mr. Davis "correctly" (i.e. in accordance with the Department's <u>written</u> policy) answered question 4 on the December 5, 1997 examination (indicating that it is "False" that officers are not accountable for actions they take if they acted on direct orders of a supervisor), Mr. Davis knew from past, personal experience that there would most likely <u>not</u> be individual accountability for his own actions, particularly if he acted on direct orders of a supervisor. Rather, Mr. Davis was aware that there were specific instances where a superior officer ordered a beating, and a corrections officer carried it out. Mr. Davis also knew that when SID investigated the incident, they only spoke to the lieutenant, who "took care of it." **Exhibit A, ¶ 4**.

30.    Undisputed to the extent that Mr. Davis knew it was a violation of the Department's <u>written</u> policy to omit details of the manner and degree of force used when submitting a written report; however, this statement is **disputed** to the extent that Mr. Davis knew it was the <u>unwritten</u> policy of the Department to omit these details. **Exhibit B**: Admission No. 9.

31.    Undisputed to the extent that Mr. Davis knew it was Suffolk County Sheriff's Department <u>written</u> policy that an officer could not use, or permit the use of force when (a) the force is excessive; (b) the force is used as punishment; or (c) the force is used as revenge. This statement is **disputed** to the extent that Mr. Davis knew it was the <u>unwritten</u> policy of the Department to use force that was excessive, used as punishment, or used as revenge. **Exhibit B**: Admission No. 11.

32.    Undisputed.

33.    Disputed – While it is true that Mr. Davis "correctly" (i.e. in accordance with the Department's <u>written</u> policy) answered question 13 on the February 2, 2001 examination (indicating that it is "False" that officers are not accountable for actions they take if they acted on direct orders of a supervisor), Mr. Davis knew from past, personal experience that there would most likely <u>not</u> be individual accountability for his own actions, particularly if he acted on direct orders of a supervisor. **Exhibit A, ¶ 4**.

34.    Undisputed.

35.    Disputed – While it is true that Mr. Davis "correctly" (i.e. in accordance with the Department's <u>written</u> policy) answered question 13 on the February 5, 2002

3

examination (indicating that it is "False" that officers are not accountable for actions they take if they acted on direct orders of a supervisor),  Mr. Davis knew from past, personal experience that there would most likely <u>not</u> be individual accountability for his own actions, particularly if he acted on direct orders of a supervisor.  **Exhibit A, ¶ 4**

36.    Disputed to the extent that question 10 on Defendant's Exhibit 10 does not deal with whether or not officers were permitted to use force when it was excessive, used as punishment, or used as revenge; rather, question 10 asked what an officer's obligations were when, during the application of force ("correctly"), an inmate sustains minor injuries.  <u>Defendants' Exhibit 10.</u>

37.    Undisputed.

38.    Undisputed.

39.    Undisputed.

40.    Undisputed to the extent that ¶¶ 18-19 of the Complaint state that Mr. Davis was a "participant in incidents involving the control of recalcitrant and/or disruptive inmates," and that "physical force was used against the inmate or inmates involved by members of the Department – although Mr Davis did not either participate in the use of this force, nor himself use any excessive, illegal or unauthorized physical force against any of the inmates.  Mr. Davis disputes this statement, however, to the extent that his Complaint neither uses the phrase "numerous instances" of excessive force against four detainees, nor does his Complaint characterize – in paragraphs 18-19 – the force used by other members of the Department as "excessive."  (Complaint ¶¶ 18-19).

41.    Undisputed.

42.    Undisputed to the extent that ¶¶ 20-21 of the Complaint set forth that Mr. Davis filed false reports – either in writing or verbally – regarding each of these 4 instances.  It is significant to note, however, that ¶ 20 goes on to state that "On each of these occasions, these reports were written at the direction of Mr. Davis' shift superior or supervisor, who had personal knowledge of the entirety of the subject matter and who received the completed report, reviewed and approved it, often approvingly using the phrase "good report." (Complaint ¶¶ 20-21).

43.    Undisputed to the extent that Defendants accurately quote the portion of ¶ 21 of the Complaint referred to herein; Plaintiff notes, however, that ¶ 21 also states that Mr. Davis "responded truthfully about his own involvement in the matter but followed

the earlier directions of his supervisors and did not accurately report or include any
improper actions by his fellow officers. . ." (Complaint ¶¶ 21).

44.    Undisputed.

45.    Undisputed.

46.    Mr. Davis is unable to state that this fact is either disputed or undisputed, as he does
not have personal knowledge about whether or not Brian Murphy testified on behalf
of the Government and on what date that testimony occurred.

47.    Mr. Davis is unable to state that this fact is either disputed or undisputed, as he does
not have personal knowledge of Officer Murphy's testimony; rather, defendants rely
on Sheriff Andrea Cabral's Affidavit for this statement, not the transcript of Officer
Murphy's testimony.

48.    Mr. Davis is unable to state that this fact is either disputed or undisputed, as he does
not have personal knowledge of Officer Murphy's testimony; rather, defendants rely
on Sheriff Andrea Cabral's Affidavit for this statement, not the transcript of Officer
Murphy's testimony.  To the extent possible, however, Mr. Davis disputes Sheriff
Cabral's recitation of Officer Murphy's actions.  Rather, Mr. Davis states that Officer
Murphy did <u>not</u> call for the SERT team while Officer Bailey and Officer Ross beat
inmate Dais.  In reality, Officer Bailey's "man down" alarm went off, and the SERT
team was directed to respond to the cell by central control.  **Exhibit A, ¶ 6**.

49.    Mr. Davis is unable to state that this fact is either disputed or undisputed, as he does
not have personal knowledge of Officer Murphy's testimony; rather, defendants rely
on Sheriff Andrea Cabral's Affidavit for this statement, not the transcript of Officer
Murphy's testimony.

50.    Mr. Davis is unable to either state that this fact is either disputed or undisputed, as
he does not have personal knowledge of Officer Murphy's testimony; rather,
defendants rely on Sheriff Andrea Cabral's Affidavit for this statement, not the
transcript of Officer Murphy's testimony.

51.    Undisputed.

52.    Undisputed.

53.    Undisputed to the extent that the portion of Mr. Davis' testimony on March 6, 2003
referred to by Defendants is accurately quoted.

54.    Undisputed.

5

55.    Undisputed.

56.    Undisputed.

57.    Disputed – ¶ 36 of the Complaint actually states, "Immediately after Mr. Davis' testimony in the United States Courthouse at trial of <u>United States v. Donnelly et al.</u> on or about March 7, 2003, he was notified of his placement on administrative leave without pay by the Department." (Complaint ¶ 36).

58.    Mr. Davis is unable to state that this fact is either disputed or undisputed, as Defendants rely on the Affidavit of Sheriff Andrea Cabral to make this assertion as opposed to providing supporting documentation.

59.    Undisputed to the extent that Mr. Davis thought he may be subject to discipline for his own admitted wrongdoing; however, Mr. Davis did not think that he would be subject to discipline for truthfully testifying at the trial of <u>U.S. v. Donnelly</u>. **Exhibit A, ¶ 5.**

60.    Disputed as to Defendants' characterization that a "large part" of the disciplinary hearing consisted of a department representative directing the Hearing Officer's attention to portions of the transcript of the criminal trial. The transcript of Mr. Davis' disciplinary hearing is a document which speaks for itself.    <u>Defendants' Exhibit 2, pp. 1-78</u>.

61.    Undisputed.

62.    Undisputed.

63.    Undisputed.

64.    Undisputed to the extent that the portion of Mr. Davis' March 5, 2003 testimony is accurately quoted; however, this fact is disputed to the extent that the quoted testimony does not purport to be a description of Mr. Davis' "understanding of an unwritten code of silence." Rather, Mr. Davis testified to the quoted language in response to a question regarding what he did "in regard to the report writing." <u>Defendants' Exhibit 3, p. 20, lines 11-14.</u>

65.    Undisputed to the extent that Mr. Davis and his attorney were, in fact, informed that his disciplinary hearing was not based on the fact that he testified at the criminal trial. This fact is very much in dispute, however – and the fact that the <u>Superintendent of the Suffolk County Sheriff's Department</u> stated otherwise at Mr. Davis' disciplinary hearing does not take this fact out of dispute. Additionally, Superintendent Horgan stated that he would ". . . **argue** it's not retaliatory, due to the fact that [Mr. Davis]

testified.  It's disciplinary, due to the fact that he violated department policies.    **I think we'll have to agree to disagree on that one**." (emphasis added).  The parties continue to disagree as to this fact – and this is a dispute which requires resolution by a jury.  Defendants' Exhibit 2, p. 73 line 18 - p. 74 line 16.

66.    Undisputed.

67.    Disputed – Defendants specifically draw attention to p. 28 line 22 through p. 29 line 6 to state that Mr. Davis was unable to quantify how many **false reports** he had submitted over the course of his 12 year career.  In reality, however, Mr. Davis was asked the following:

   Q:    *I'm asking you beyond the four that you testified to, how many others do you recall that you either witnessed, participated in, or filed a false report involving excessive use of force by yourself or any other office or inmate?*

   A:    *I don't know how many.*

   Q:    *Was it more than 10?*

   A:    *It could have been more than 10.  It could have been more than 100.  I don't know.*

   Mr. Davis was not responding, as suggested by Defendants, that he could have filed more than 100 false reports.  Rather, his response was directed at a question that involved 3 possibilities: incidents he witnessed, incidents he participated in, or incidents in which he filed a false report.  Moreover, Mr. Davis' truthful response that he "does not know" how many reports he submitted is not affirmative proof that it was more than 10, more than 100, or any other specific number.  Defendants' Exhibit 2, p. 128 line 23 - p. 129 line 6.

68.    Undisputed.

69.    Undisputed.

70.    Undisputed to the extent that Mr. Davis' testimony is accurately quoted.  Mr. Davis disagrees with Defendants' choice of the phrase "I'm just assuming" to add emphasis to, however, and suggests that emphasis should be added to the fact that Mr. Davis testified that if everyone knew you were ratting out an officer, "**god knows what could happen.  Nobody liked it."**Defendants' Exhibit 2, p. 106 line 20 - p. 107 line 10.

71.    Undisputed.

7

72.     Undisputed to the extent that Mr. Davis knew that the "code of silence" was contrary to the way he was <u>officially</u> trained; however, this fact is disputed to the extent that Mr. Davis was equally well aware that the "code of silence" was the <u>unofficial</u> policy of the Department. **Exhibit A ¶ 8**; **Exhibit C**: **Report of the Special Commission on the Suffolk County Sheriff's Department ("Stern Report"); Exhibit D: Report of Professor Raymond Helgemoe.**

73.     Undisputed.

74.     Undisputed, as Hearing Officer Elizabeth Keeley's Findings of Fact in Disciplinary Hearing of Paul Davis is a document which speaks for itself. Defendants' Exhibit 14.

75.     Disputed – it is Plaintiff's position that although his Notice of Termination states that he was terminated because of the "egregious nature of [his] actions, and [his] repeated and flagrant disregard of departmental policies," the reality is that the Sheriff chose to fire him in retaliation for his testimony in <u>United States v. Donnelly</u>. **Exhibit A ¶ 9; Exhibit E: Boston Globe Article ("Court documents contradict Cabral in whistleblower case")**

76.     Undisputed.

77.     Disputed – the fact that Sheriff Andrea Cabral, a named defendant in this matter, states that Mr. Davis was disciplined entirely on the basis of his "admitted policy violations" and "not at all on the fact that he testified at trial or assisted the authorities in their prosecution of other former jail officers" is a self-serving statement that does not remove this issue from dispute. Rather, this disputed issue of material fact must be resolved by a jury.

78.     Disputed – the fact that Sheriff Andrea Cabral, a named defendant in this matter, states that Mr. Davis' termination had "absolutely nothing to do with his status as an individual who allegedly cooperated with the government and testified at trial" is a self-serving statement that does not remove this issue from dispute. Rather, this disputed issue of material fact must be resolved by a jury

79.     Undisputed.

80.     Plaintiff is unable to state whether this "fact" is disputed or undisputed, as it is merely a self-serving statement made by defendant Sheriff Andrea Cabral.

**The Milliken Incident**

81.     Undisputed.

8

82.    Undisputed – though Plaintiff notes that this is Plaintiff's Response to Interrogatory No. 7 (not No. 20).

83.    Undisputed.

84.    Undisputed.

85.    Undisputed.

86.    Undisputed to the extent that   when Mr. Davis spoke to SID about the Milliken incident, he told them that the officers had to put Milliken in leg irons, and SID told him to submit a report about that.  At the time of the Milliken incident, Lieutenant Sutherland and Tony Nuzzo said that Lt. Donnelly was already in trouble over other incidents, and said that the officers should leave Lt. Donnelly out of their reports. Nuzzo said that he would write a report on behalf of everyone (instead of everyone writing their own report).  **Exhibit B**: Admission No. 30.

87.    Undisputed, as explained in No. 86, above.  **Exhibit B**: Admission No. 31.

88.    Undisputed, to the extent explained in No. 86, above.  Mr. Davis does dispute, however, that he filed a false report to protect himself.  Rather, Mr. Davis states that he filed a false report to protect other jail officers, but that he did not need to "protect" himself as he had not assaulted Milliken.  The only thing Mr. Davis was protecting himself from was, in a sense, retaliation or revenge from other jail officers if he had reported truthfully what they had done.  **Exhibit B**: Admission No. 32.

89.    Undisputed to the extent that Mr. Davis   knew this was Suffolk County Sheriff's Department written policy; however, disputed to the extent that Mr. Davis knew that it was the unwritten policy of the Department to not report observations that another officer assaulted an inmate.  **Exhibit B**: Admission No. 33.

90.    Undisputed to the extent that Mr. Davis knew this was Suffolk County Sheriff's Department written policy; however, disputed to the extent that Mr. Davis knew that it was the unwritten policy of the Department to submit false reports.  **Exhibit B:** Admission No. 34.


**The Doocey / Ackerly Incident**

91.    Undisputed.

92.    Undisputed.

93.     Undisputed.

94.     Undisputed.

95.     Undisputed.

96.     Undisputed.

97.     Undisputed.

98.     Undisputed.

99.     Undisputed to the extent that Mr. Davis knew this was Suffolk County Sheriff's Department written policy; however, disputed to the extent that Mr. Davis knew that it was the unwritten policy of the Department to not report observations that another officer assaulted an inmate.  **Exhibit B**: Admission No. 40.

100.    Undisputed to the extent that Mr. Davis did not report his observations to protect Officer Cook. Mr. Davis did not need to protect himself, however, as he had not assaulted Doocey.  The only thing Mr. Davis was protecting himself from, in a sense, was retaliation or revenge from other jail officers if he reported truthfully what they had done.  Additionally, Mr. Davis did not report his observations because Officer Cook assaulted inmate Doocey at Lieutenant Donnelly's order; Lt. Donnelly also said that whoever handcuffed Doocey should just write a use of force report on the use of handcuffs.  **Exhibit B:** Admission No. 41.

101.    Undisputed to the extent that Mr. Davis knew this was Suffolk County Sheriff's Department written policy; however, disputed to the extent that Mr. Davis knew that it was the unwritten policy of the Department to submit false reports.  **Exhibit B**: Admission No. 42.

102.    Undisputed.

**The Roscoe Incident**

103.    Undisputed.

104.    Undisputed.

105.    Undisputed.

106.    Undisputed.

107.    Undisputed.

108.    Undisputed.

109.    Undisputed.

110.    Undisputed.

111.    Undisputed to the extent that the report submitted contained false information and was submitted at Lieutenant Sutherland's request.  **Exhibit B**: Admission No. 14 and 15.

112.    Undisputed to the extent that Mr. Davis wrote that Reginald Roscoe "actively resisted" at Lieutenant Sutherland's urging (after Lt. Sutherland witnessed the incident).  Lieutenant Sutherland knew the information was false, and signed off on the report.  **Exhibit B**: Admission No. 16.

113.    Undisputed.

114.    Undisputed to the extent that it was common practice among corrections officers in the Sheriff's Department for multiple corrections officers to write reports together. **Exhibit B**: Admission No. 19.

115.    Undisputed – Mr. Davis did not report his observations to his shift commander because Lieutenant Sutherland, the officer he reported to, witnessed the events.  Mr. Davis reported to his supervisor, not the shift commander.  **Exhibit B**: Admission No. 20.

116.    Undisputed – because Mr. Davis was never questioned about these events; rather, Lieutenant Sutherland, who witnessed the assault, was questioned about his observations.  **Exhibit B**: Admission No. 21.

117.    Undisputed to the extent that Mr. Davis knew this was Suffolk County Sheriff's Department written policy; disputed to the extent that Mr. Davis knew that it was the unwritten policy of the Department to not report observations that another officer assaulted an inmate.  **Exhibit B**: Admission No. 22.

118.    Undisputed to the extent that Mr. Davis knew this was Suffolk County Sheriff's Department written policy; however, disputed to the extent that Mr. Davis knew that it was the unwritten policy of the Department to submit false reports.  **Exhibit B**: Admission No. 23.

**The Dais Incident**

119.   Undisputed.

120.   Undisputed.

121.   Undisputed.

122.   Undisputed.

123.   Undisputed.

124.   Undisputed.

125.   Undisputed.

126.   Undisputed – the first time Mr. Davis spoke with the FBI was for approximately five minutes before he testified before the Grand Jury.  At that time, he did not tell them anything, nor was he asked any questions.  **Exhibit B**: Admission No. 48.

127.   Undisputed for the same reason stated in No. 126, above.

128.   Undisputed.

129.   Undisputed.

130.   Undisputed.

**Discipline Imposed Upon Other Officers**

131.   Undisputed.

132.   Undisputed.

133.   Undisputed.

134.   Undisputed.

135.   Undisputed.

136.   Undisputed.

137.   Undisputed.

138.    Undisputed.

139.    Undisputed.

140.    Undisputed.

**Cabral Appointment to Office of Sheriff**

141.    Undisputed.

142.    Undisputed.

143.    Mr. Davis is unable to say whether these statements should be disputed or undisputed, as they are self-serving statements made by Sheriff Andrea Cabral – a named defendant in this action.

144.    Mr. Davis is unable to say whether these statements should be disputed or undisputed, as they are self-serving statements made by Sheriff Andrea Cabral – a named defendant in this action.

145.    Mr. Davis is unable to say whether these statements should be disputed or undisputed, as they are self-serving statements made by Sheriff Andrea Cabral – a named defendant in this action.

146.    Mr. Davis is unable to say whether these statements should be disputed or undisputed, as they are self-serving statements made by Sheriff Andrea Cabral – a named defendant in this action.

Respectfully submitted,
**PAUL DAVIS**
By his attorneys,

/s Christie M. Charles
_____
George F. Gormley (BBO # 204140)
Christie M. Charles (BBO # 646995
***George F. Gormley, P.C.***
655 Summer Street
Boston, MA 02210
(617) 478-2750

**Dated:**        September 29, 2005

13