UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PAUL DAVIS,

    Plaintiff,

                                                     Civil Action No. 04-11851-WGY

v                                   )

SUFFOLK COUNTY AND    )
ANDREA CABRAL
(in her official capacity)         )

    Defendants.

## AFFIDAVIT OF PAUL DAVIS

Now comes PAUL DAVIS, and on oath, does depose and say as follows:

    am the plaintiff in the above captioned matter

2.    From February 20, 1991 until July 15, 2003, I was employed as a jail officer at the Nashua Street Jail.

3.    During the twelve (12) years that I worked at the Nashua Street Jail, I was never accused of using force incorrectly or in violation of department policy, nor did I ever use force incorrectly or in violation of department policy.

4.    While I was aware of the fact that it was the written policy of the department that officers were accountable for their own actions, even if they acted on direct orders of a supervisor, I also knew from past, personal experience that there would most likely not be individual accountability for an officer's own actions, particularly if he acted on direct orders of a supervisor. Rather, I was aware that there were specific instances where a superior officer ordered a beating, and a corrections officer carried it out. I also knew that when SID investigated the incident, the SID investigators only spoke to the lieutenant, who "took care of it."

5.    At the time I testified in United States v. Donnelly, I was aware that I might be subject to discipline for my own admitted wrongdoing; however, I did not think that I would be subject to discipline for truthfully testifying at the trial of U.S. v. Donnelly.

6.    Further, contrary to Sheriff Cabral's account of Officer Murphy's testimony regarding his actions in the Dais incident, Officer Murphy did not call for the SERT

team while Officer Bailey and Officer Ross beat inmate Dais. In reality, Officer Bailey's "man down" alarm went off, and the SERT team was directed to respond to the cell by central control.

7. Additionally, while it may be true that Officer Murphy only admitted to one incident of falsifying a report, Officer Murphy was not a member of the SERT team. Officer Murphy worked as a line officer, and eventually worked in the booking room. Officer Murphy therefore was only responsible for one particular area on a given shift, and was therefore only exposed to potential incidents with inmates in that one area. As a member of the SERT team, on the other hand, I was responsible for the entire jail during any given shift, and could easily have to respond to as many as five (5) or six (6) incidents per shift.

8. I knew that the "code of silence" was contrary to the way I was officially trained; however, I was equally well aware that the "code of silence" was the unofficial policy of the Department.

9. Although the Notice of Termination I received states that I was terminated because of the "egregious nature of [my] actions, and [my] repeated and flagrant disregard of departmental policies," on information and belief Sheriff chose to fire me in retaliation for my testimony in United States v. Donnelly.

10. Finally, while Defendants note that Officer Murphy also testified as to his own wrongdoing and was not fired, on information and belief, Kenneth Joyner testified before the Grand Jury but was not called as a government witness at the trial of United States v. Donnelly. Officer Joyner was my partner during the Milliken incident, and I believe that he was also directed by SID to write a report regarding our use of leg irons on inmate Milliken. Presumably, Officer Joyner testified truthfully about that incident before the Grand Jury. Officer Joyner did not testify publicly about his involvement in that incident, though; as a result, Officer Joyner is still employed by the Suffolk County Sheriff's Department.

**SIGNED AND SUBSCRIBED UNDER THE PAINS AND PENALTIES OF PERJURY**

THIS 29 DAY OF SEPTEMBER, 2005.

_____
PAUL DAVIS