UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| PAUL DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 04-11851-WGY |
| | ) | |
| | ) | |
| SUFFOLK COUNTY AND | ) | |
| ANDREA CABRAL | ) | |
| (in her official capacity) | | |
| | ) | |
| Defendants. | ) | |

### PLAINTIFF'S RESPONSE TO REQUEST FOR ADMISSIONS

1   Paul Davis was issued an Employee Policy Manual on or about August 4, 1996.

   **Admitted – I received the Employee Policy Manual on or about my first day as an employee of the Sheriff's Department (February 20, 1991) and received a revised version on or about August 4, 1996.**

2   The Policy Manual Paul Davis received on or about August 4, 1996 contained a copy of the Suffolk County Sheriff's Department S – 220 (employee general conduct).

2.  Admitted.

3   The Policy Manual Paul Davis received on or about August 4, 1996 contained a copy of the Suffolk County Sheriff's Department S – 505 (use of force).

3.  Admitted.

4.  The 60-page document introduced as Exhibit 3 at Paul Davis' May 2, 2003 disciplinary hearing is a genuine and accurate copy of the official court transcript for the testimony Paul Davis provided in the United States District Court for the District of Massachusetts on March 5, 2003.

4.  Admitted.

5   The 122-page document introduced as Exhibit 4 at Paul Davis' May 2, 2003 disciplinary hearing is a genuine and accurate copy of the official court transcript for the testimony Paul Davis provided in the United States District Court for the District of Massachusetts on March 6, 2003.

5.   Admitted.

6.   The 9-page document introduced as Exhibit 5 at Paul Davis' May 2, 2003 disciplinary hearing is a genuine and accurate copy of Suffolk County Sheriff's Department Policy S-505 that was issued to Paul Davis on or about August 4, 1996.

6.   Admitted.

7    The 12-page document introduced as Exhibit 6 at Paul Davis' May 2, 2003 disciplinary hearing is a genuine and accurate copy of Suffolk County Sheriff's Department Policy S-220 that was issued to Paul Davis on or about August 4, 1996.

7.   Admitted.

8    The 2-page document introduced as Exhibit 18 at Paul Davis' May 2, 2003 disciplinary hearing is a genuine and accurate copy of an examination Paul Davis took on or about December 5, 1997.

8.   Admitted.

9    As of December 5, 1997, Paul Davis knew that it was a violation of Suffolk County Sheriff's Department policy to omit details of the manner and degree of force used when submitting a written report.

9.   **Admitted to the extent that I knew it was a violation of Suffolk County Sheriff's Department <u>written</u> policy to omit details of the manner and degree of force used when submitting a written report; however, I deny this to the extent that I knew that it was the <u>unwritten</u> policy of the Department to omit these details.**

     As of December 5, 1997, Paul Davis knew that he would be held accountable for his own actions even if he acted on direct orders of a supervisor.

10.  **Denied – I knew from past experience that there would most likely <u>not</u> be individual accountability, particularly if I acted on the direct order of a supervisor. There were specific instances where a superior officer ordered a beating, and a corrections officer carried it out. When SID investigated the incident, they only spoke to the lieutenant, who "took care of it."**

1    As of December 5, 1997, Paul Davis knew that an officer could not use, or permit the use of force when: (a) the force is excessive; (b) the force is used as punishment; or (c) the force is used as revenge.

     **Admitted to the extent that I knew this was Suffolk County Sheriff's Department**

2

written policy; however, I deny this to the extent that I knew that it was the <u>unwritten</u> policy of the Department to use force that was excessive, or used as punishment.

12   The 9-page document introduced as Exhibit 23 at Paul Davis' May 2, 2003 disciplinary hearing is a genuine and accurate copy of an examination Paul Davis took on or about February 2, 2001.

12.   Admitted.

13   The 9-page document introduced as Exhibit 25 at Paul Davis' May 2, 2003 disciplinary hearing is a genuine and accurate copy of an examination Paul Davis took on or about February 5, 2002.

13.   Admitted.

14.   The 2-page document introduced as Exhibit 27 at Paul Davis' May 3, 2003 (sic) disciplinary hearing is a genuine and accurate copy of the disciplinary report Paul Davis filed against Reginald Roscoe on or about June 15, 1998.

14.   Admitted.

15   The 2-page document introduced as Exhibit 27 at Paul Davis' May 3, 2003 (sic) disciplinary hearing contains false information.

15.   **Admitted – Exhibit 27, which contains false information, was submitted at Lieutenant Sutherland's request.**

16.   Paul Davis falsely charged Reginald Roscoe with "actively resisting" to justify another officer's use of excessive force against Roscoe.

16.   **Admitted – I falsely wrote that Reginald Roscoe "actively resisted" at Lieutenant Sutherland's urging (after Lieutenant Sutherland witnessed the incident). Lieutenant Sutherland knew the information was false, and signed off on the report.**

17   Paul Davis observed another officer assault Reginald Roscoe on multiple occasions on June 15, 1998.

17.   Admitted.

18   Paul Davis did not include his observations that another officer assaulted Reginald Roscoe on multiple occasions on June 15, 1998 in his written report.

18.   Admitted.

3

19 Paul Davis spoke with Thomas Bethune on or about June 5, 1998 and agreed to falsify reports and conceal Bethune's assault upon Reginald Roscoe.

**19. Admitted – as was common practice among corrections officers in the Sheriff's Department, Thomas Bethune and I wrote the report together.**

20. Paul Davis did not report his observations that another officer assaulted Roscoe to his shift commander.

**20. Admitted – however, Lieutenant Sutherland, the officer I reported to, witnessed the events. I reported to my supervisor, not the shift commander.**

21 Paul Davis did not report his observations that another officer assaulted Roscoe to the Deputy Superintendent, the Superintendent, the Special Sheriff, the Sheriff or to any investigator in the Sheriff's Investigation Division.

**21. Admitted, because I was never questioned about these events; rather, Lieutenant Sutherland, who witnessed the assault, was questioned about his observations.**

22 On or about June 15, 1998, Paul Davis understood that his failure to report his observations that another officer had assaulted Roscoe was a violation of Suffolk County Sheriff's Department policy.

**22. Admitted to the extent that I knew this was Suffolk County Sheriff's Department <u>written</u> policy; however, I deny this to the extent that I knew that it was the <u>unwritten</u> policy of the Department to <u>not</u> report observations that another officer assaulted an inmate.**

23. On or about June 15, 1998, Paul Davis understood that his submission of a false report concerning the Roscoe incident was a violation of Suffolk County Sheriff's Department policy.

**23. Admitted to the extent that I knew this was Suffolk County Sheriff's Department <u>written</u> policy; however, I deny this to the extent that I knew that it was the <u>unwritten</u> policy of the Department to submit false reports.**

24. On or about June 15, 1998, Paul Davis understood that his failure to report the excessive use of force that he witnessed could result in discipline being imposed against him.

**24. Denied – I knew from past experience that I would most likely <u>not</u> be disciplined for failure to report excessive use of force – particularly since my lieutenant witnessed the use of excessive force, encouraged me to write a "good report," and then told me my report – which failed to document the use of excessive force – was a "good report" and**

4

>   signed off on it.

25      On or about June 15, 1998, Paul Davis understood that the submission of a false report could result in the imposition of discipline against him.

25.     **Denied – I knew from past experience that I would most likely <u>not</u> be disciplined for submitting a false report – particularly since my lieutenant witnessed the use of excessive force, encouraged me to write a "good report," and then told me my report – which failed to document the use of excessive force – was a "good report" and signed off on it.**

26.     The 2-page document introduced as Exhibit 28 at Paul Davis' May 3, 2003 (sic) disciplinary hearing is a genuine and accurate copy of the use of force report Paul Davis wrote and submitted concerning an April 23, 1999 incident with Sean Milliken on or about April 30, 1999.

26.     **Admitted.**

27.     The 1-page document introduced as Exhibit 29 at Paul Davis' May 3, 2003 (sic) disciplinary hearing is a genuine and accurate copy of the use of force narrative Paul Davis wrote and submitted concerning an April 23, 1999 incident with Sean Milliken on or about April 30, 1999.

27.     **Admitted.**

28      On or about April 23, 1999, Paul Davis observed other jail officers assault Sean Milliken on two separate occasions, and did not report his observations.

28.     **Admitted.**

29.     When questioned by a department investigator about the Milliken incident, Paul Davis lied, and did not report to the investigator that he had observed staff assault the inmate.

29.     **Admitted.**

30.     When he ultimately submitted a written report on the Milliken incident, Paul Davis did not report that he observed staff assault the inmate.

30.     **Admitted – when I spoke to SID about the Milliken incident, I told them that we had to put Milliken in leg irons, and they told me to submit a report about that. At the time of the Milliken incident, Lieutenant Sutherland and Tony Nuzzo said that Lt. Donnelly was already in trouble over other incidents, and said that we should leave Lt. Donnelly out of our reports. Nuzzo said that he would write a report on behalf of everyone**

   (instead of everyone writing their own report).

31 Paul Davis filed a false report and lied to SID about the Milliken incident to cover up the assault.

31. Admitted, as explained in answer to request 30.

32. Paul Davis filed a false report and lied to SID about the Milliken incident to protect himself and other jail officers.

32. Admitted – as explained in answer 30, I filed a false report to protect other jail officers. I did not need to protect myself, however, as I had not assaulted Milliken. The only thing I was protecting myself from, in a sense, was retaliation or revenge from other jail officers if I reported truthfully what they had done.

33 On or about April 23, 1999, Paul Davis understood that his failure to report his observations that another officer had assaulted Milliken was a violation of Suffolk County Sheriff's Department policy.

33. Admitted to the extent that I knew this was Suffolk County Sheriff's Department written policy; however, I deny this to the extent that I knew that it was the unwritten policy of the Department to not report observations that another officer assaulted an inmate.

34 On or about April 30, 1999, Paul Davis understood that his submission of a false report concerning the Milliken incident was a violation of Suffolk County Sheriff's Department policy.

34. Admitted to the extent that I knew this was Suffolk County Sheriff's Department written policy; however, I deny this to the extent that I knew that it was the unwritten policy of the Department to submit false reports.

35 On or about April 23, 1999, Paul Davis understood that the failure to report excessive use of force that he witnessed could result in discipline being imposed against him.

35. Denied – I knew from past experience that I would most likely not be disciplined for failure to report excessive use of force – particularly since one of my lieutenants told me not to include Lt. Donnelly in any report I filed since Lt. Donnelly was already in trouble and did not need more.

36 On or about April 30, 1999, Paul Davis understood that the submission of a false report could result in the imposition of discipline against him.

36. **Denied** – I knew from past experience that I would most likely **not** be disciplined for submitting a false report – particularly since in the past my lieutenant witnessed the use of excessive force, encouraged me to write a "good report," and then told me my report – which failed to document the use of excessive force – was a "good report" and signed off on it.

37  The 2-page document introduced as Exhibit 30 at Paul Davis' May 3, 3003 (sic) disciplinary hearing is a genuine and accurate copy of a use of force report filed by Paul Davis concerning William Doocey on or about April 15, 1999.

37. **Admitted.**

38  On or about April 15, 1999, Paul Davis observed two jail officers assault William Doocey and failed to report his observations.

38. **Admitted.**

39. Paul Davis stood by and watched Officer Cook hit inmate Doocey

39. **Admitted** – I witnessed Officer Cook hit inmate Doocey at the order of Lt. Donnelly.

40. On or about April 15, 1999, Paul Davis understood that his failure to report his observations that another officer had assaulted Doocey was a violation of Suffolk County Sheriff's Department policy.

40. **Admitted** to the extent that I knew this was Suffolk County Sheriff's Department **written** policy; however, I deny this to the extent that I knew that it was the **unwritten** policy of the Department to **not** report observations that another officer assaulted an inmate.

41  Paul Davis did not report his observation of Officer Cook assaulting inmate Doocey because he was trying to protect himself and Officer Cook.

41. **Admitted** to the extent that I did not report my observations to protect Officer Cook. I did not need to protect myself, however, as I had not assaulted Doocey. The only thing I was protecting myself from, in a sense, was retaliation or revenge from other jail officers if I reported truthfully what they had done. Additionally, I did not report my observations because Officer Cook assaulted inmate Doocey at Lieutenant Donnelly's order; Lt. Donnelly also said that whoever handcuffed Doocey should just write a use of force report on the use of handcuffs.

42. On or about April 15, 1999, Paul Davis understood that his submission of a false or misleading report concerning the Doocey incident was a violation of Suffolk County

Sheriff's Department policy.

42. Admitted to the extent that I knew this was Suffolk County Sheriff's Department <u>written</u> policy; however, I deny this to the extent that I knew that it was the <u>unwritten</u> policy of the Department to submit false reports.

43. On or about April 15, 1999, Paul Davis understood that the failure to report the use of excessive force that he witnessed could result in discipline being imposed upon him.

43. Denied – I knew from past experience that I would most likely <u>not</u> be disciplined for failure to report excessive use of force.

44. On or about April 15, 1999, Paul Davis understood that the submission of a false or misleading report could result in the imposition of discipline against him.

44. Denied – I knew from past experience that I would most likely <u>not</u> be disciplined for filing a false or misleading report – particularly since we were encouraged to do so by our superior officers, who signed off on reports even when they had witnessed the incident in question and had first-hand knowledge that the reports were false.

45. Some time in September of 1999 Paul Davis became aware of an incident involving jail officer Brian Baily and inmate Nicholas Dais.

45. Admitted.

46. Some time subsequent to the incident between Bailey and Dais, Paul Davis and jail officer Bailey discussed the incident in Paul Davis' car.

46. Admitted.

47. During the conversation referenced in ¶ 46 above, Bailey, stated to Paul Davis that he [Bailey] had hit Nicholas Dais.

47. Admitted.

48. When Paul Davis first spoke with representatives of the Federal Bureau of Investigation he did not tell them everything exactly because he was still trying to protect jail officer Bailey.

48. Admitted – the first time I spoke with the FBI was for approximately five minutes before I testified before the Grand Jury. At that time, I did not tell them anything, nor was I asked any questions.

49. When Paul Davis first spoke to representatives of the Federal Bureau of Investigation he did

8

not tell them about Bailey's statement in the car referenced in ¶¶ 46-47 above.

49. Admitted, for the same reason explained in response to request 48.

50. When Paul Davis first testified before the Grand Jury, he did not tell them about the conversation in the car with Bailey referenced in ¶¶ 46-47 above.

50. Admitted.

51 In his first appearance at the Grand Jury, Paul Davis did not testify about the conversation in the car with Bailey referenced in ¶¶ 46-47 above because he was still trying to protect jail officer Bailey and did not want to tell anything too damaging.

51. Admitted.

52. When Paul Davis first spoke to representatives of the Federal Bureau of Investigation for the second time he did not tell them the conversation in the car with Bailey referenced in ¶¶ 46-47 above.

52. Denied – between my two Grand Jury appearances, I met with AUSA Theodore Merritt and the two FBI agents at length. This meeting was approximately one week after my first Grand Jury appearance. At that meeting, I signed a proffer letter and started fully discussing everything I knew about incidents at the jail. During my second Grand Jury appearance, I testified about the conversation I had in the car with Bailey – and admitted that during my first appearance, I had been trying to protect him.

53. The 167-page document dated June 23, 2003 entitled *In the Matter of Discipline Hearing of Paul Davis*, is a genuine and accurate copy of the transcript for Paul Davis' May 2, 2003 disciplinary hearing.

53. Admitted.

**SIGNED AND SUBSCRIBED UNDER THE PAINS AND PENALTIES OF PERJURY**

THIS _20_ DAY OF _May_, 2005.

_____
PAUL DAVIS