I have reviewed all of the documents provided to me in formulating my opinions and conclusions relative to the discharge of Mr. Davis from the employment of the House of Corrections after his testimony before a grand jury. (See Attachment 1 for a list of documents.)

I note that Sheriff Cabral assumed her position after the conduct alleged had occurred. It appears that the action taken against Mr. Davis was a reaction to press surrounding the incident and grand jury indictment. I believe that to scapegoat one individual was a reaction to the negative press but such a response was counter-productive. Based on my experience as Warden of The New Hampshire State Prison/New Hampshire Commissioner of Corrections, it was counter-productive because it perpetuated the "code of silence" among the correctional staff. It appears to me from reading the information sent to me that there were a number of others on the staff of the jail who were involved. I found from my experience as warden that to scapegoat one individual without conducting an investigation to determine how many others were involved and to what degree in similar incidents or witnessed them was inappropriate. An in depth investigation, external or internal, would have allowed the sheriff to rewrite the institution rules and regulations and have served notice on the entire staff of the consequences of violations of the same. I found, as a warden, that unless there are open lines of communication, including the protection of those who report incidents, that there is great reluctance to report any violations of the rules and regulations.

Recognizing how difficult it is to be aware of all that is occurring at all times, I also know that the "code of silence", that is, one does not report on fellow officers, is a major factor in not having open lines of communication, that is, one does not report on fellow officer(s). In a pre-trial holding facility unless the incident(s) received a substantial amount of publicity, the correctional staff are often controlling individuals who little is often known about, e.g. substance abuse, mental

2

health, propensity for violence. In dealing with the unknown in a jail, one has to rely upon one's fellow officers for support should and when an incident occurs, and if a person is known as a snitch there is inherent fear of lack of or no support if he/she becomes involved in an incident that requires backup.

Sheriff Rouse and his senior management appear to have had a "hands off" attitude in the actual running of the institution. This, I believe, was a major contributing factor to the inappropriate action of some staff members who then administered "punishment" on some inmates without using the institution approved methods of dealing with infractions.

This institutional climate that was perpetuated by Sheriff Rouse and his staff were, if not directly, were at least indirectly responsible for the abuse that occurred.

After reviewing Mr. Davis's testimony before the Grand Jury, it seems to clearly establish that he did not use excessive force or engage in physical violence. It is also clear that Mr. Davis signed reports that contained omissions of detail or facts. These reports were not only verbally approved but signed off by a senior officer. Support of fellow staff members by glossing over details is a not uncommon phenomenon in corrections. It is surprising to me that senior staff members did not review them. As a warden, I read the daily logs and all incident reports which were supposed to be on my desk each day. Their review could have alerted the management to incidents of omission, e.g. medical log versus incident reports.

A review of documents and asking Mr. Davis about training he had received, it is apparent that there is a significant gap in the area of ethics and ethical behavior in a correctional setting. The shortfall, in my

3

opinion, may be a significant factor in the decision making on signing of reports that were not completely truthful. In my class *Custody, Control and Treatment* at the University of New Hampshire and at numerous American Correctional Association meetings, a key point has been made that one must "do the right thing."

The incidents that Mr. Davis was charged with were part and parcel of the institutional climate. As a warden and in talking with other wardens and commissioners, there is agreement that one should on a random unannounced basis tour the facility covering all units and all shifts. This presence not only allows one to keep his/her finger on the pulse of the institution but also enables interaction with junior staff.

A key issue in the case I have found from review of all documents (see attachment list of materials sent to me) is that Mr. Davis <u>did not</u> engage in any acts of physical violence against inmates but was a passive participant and report writer who was not aided and abetted but was encouraged by his seniors to color the facts. That he subsequently spoke truthfully about these incidents to federal authorities is an illustration of doing what the law requires. Any policy against such truthful communications to outside law enforcement agencies is counterproductive to the institution and serves only to allow and perpetuate more serious unlawful activity. In my opinion, the dismissal was clearly excessive.

*Raymond Helgemoe*
Raymond A. Helgemoe
Criminal Justice Consultant

(attachment on following page)

## Attachment 1

The following is a list of materials I reviewed:

A. Complaint;

B. Defendants' Motion to Dismiss the Plaintiff's Complaint (and accompanying Memorandum of Law);

C. Plaintiff's Opposition to Defendants' Motion to Dismiss the Complaint (and accompanying Memorandum of Law);

D. **Answer of Defendants Suffolk County and Andrea Cabral;**

E. **Defendants' Initial Disclosure;**

F. **Plaintiff's Initial Disclosure;**

G. Defendants' Response to Plaintiff's Request for Interrogatories;

H. **Defendants' Response to Plaintiffs Request for Production of Documents;**

I. Plaintiff's Response to Defendants' First Set of Interrogatories;

J. Plaintiff's Response to Request for Production of Documents;

K. Plaintiff's Response to Request for Admissions;

L. **Paul Davis' Personnel File;**

M. Report of the special Commission on the Suffolk County Sheriff's Department dated October 15, 2002;

**N. United States Attorney Michael J. Sullivan's April 22, 2003 letter to Sheriff Andrea Cabral;**

**O. Whistleblower Statute;**

P. Transcript of Mr. Davis' Disciplinary Hearing; and

Q. Notice of Termination.