UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PAUL DAVIS, )<br>)<br>Plaintiff )<br>)<br>v. )<br>)<br>SUFFOLK COUNTY, SUFFOLK )<br>COUNTY SHERIFF'S )<br>DEPARTMENT AND ANDREA )<br>CABRAL (in her official capacity), )<br>)<br>Defendants ) | Civil Action No. 04-11851-WGY |

### **MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO STRIKE MATERIALS INCLUDED IN PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants hereby move this Honorable Court to strike from the summary judgment record certain materials included in Plaintiff's Opposition to Defendants' Motion for Summary Judgment.

**I.   Plaintiff's Opposition To Defendants' Motion For Summary Judgment Relies On Inadmissible Hearsay Which Should Not Be Considered By This Court.**

Evidence that is inadmissible at trial, including hearsay evidence, should not be considered by a Court on a motion for summary judgment. Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990); Vazquez v. Lopez-Rosario, 134 F.3d 28, 33 (1st Cir. 1998); Fed.R.Civ.P. 56(e).

In his opposition to defendant's motion for summary judgment, Plaintiff relies heavily upon inadmissible hearsay, most notably Report on the Special Commission on the Suffolk

1

County Sheriff's Department (Exhibit C to the Opposition); on a newspaper article from the Boston Globe (Exhibit E); upon statements in the plaintiff's affidavit that are not based on his personal knowledge (Exhibit A); and upon a report of Raymond Helgemoe which itself relies on the hearsay within the Report of the Special Commission.[1]

Defendant respectfully requests, therefore, that this Court strike these materials, as they are inadmissible at trial and should not therefore be considered on summary judgment.

A. **The *Report Of The Special Commission On The Suffolk County Sheriff's Department* Contains Inadmissible Hearsay, And Should Be Therefore Be Stricken From The Summary Judgment Record.**

1. Fed. R. Evid. 803 (8) (C) Does Not Apply.

The Report in issue is not a public record as defined in Fed. R. Evid. 803 (8) (C). The Report was issued because Sheriff Rouse requested it. He asked the Governor to appoint a commission to review the Sheriff's Department. Fed. R. Evid. 803 states in part:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> > (8) Records, reports, statements or data compilations, in any form, of public offices or agencies, setting forth …
> >
> > (C) in civil actions and proceedings and against the Government in criminal cases, factual finding resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

In this case, the Commission cannot be construed as "public offices" or "agency" as required for the exception. Additionally, the Report was initiated at the request of the Sheriff and therefore was not conducted "pursuant to authority granted by law" in the traditional sense. In order to be included in the exception, it must be determined that the report contains factual

---

[1] Defendants ask this Court to Strike the report of Helgemoe for the additional reason that it was not provided to defendants until nearly two months after the deadline that had been established for its disclosure.

2

findings based on a factual investigation. Beech Aircraft Corp. v. Rainey, 488 U.S. 153 (1988). The Executive Summary of the Report states in part: "The Commission hopes that its findings and recommendations will provide the Governor with information useful to her appointment decision and will assist the new Sheriff in taking steps necessary to transform the Jail and HOC in to model institutions." It details many recommendations to ensure efficient department operations of the future. It is a blueprint for a utopian correctional facility.

      This Court has addressed this issue subsequent to the issuance of a Report pertaining to the Boston Police Department authored by a Commission chaired by James St. Clair. (The St. Clair Report) The St Clair Report was issued in the early 1990s. The circumstances that lead to the issuance of the St. Clair are similar to the situation in the instant case. The St. Clair Commission was convened at the request of Boston Mayor Flynn subsequent to the Charles Stewart incident and in response to public criticism and media coverage of the Boston Police Department. The report found deficiencies in the Boston Police Department. The St. Clair Report was deemed inadmissible in civil rights cases brought against the BPD or the City. *See* Britton v. Maloney, 901 F. Supp. 444, 452 (D. Mass. 1995). In Alves v. Lemours, 794 F. Supp 34, (D. Mass 1992), the Court ordered all references to the St. Clair Report stricken from the Complaint upon Motion from the Defendant. McGrath v. MacDonald, 853 F. Supp. 1, 2, n. 3 (D. Mass 1994) reads in part:

> "Regarding these broad conclusions, the district judge stated that, if used to prove "a City policy of inadequate police training… [the St. Clair Report,] in and of itself would provide a *prima facie* case against the [the City] in every case, no matter how frivolous…" Further, the district judge found the report "constitutes inadmissible hearsay" and "lacks the requisite objective guarantees of trustworthiness" for summary judgment purposes".

Clearly, the Court either found the St. Clair Report did not conform to the standards for an admissible public record under Rule 803 (8) (C) or the Court found the report untrustworthy.

3

In <u>Wetherill v. University of Chicago</u>, 518 F. Supp 1387, (DN.D. Ill 1981), the Court addressed the admissibility of a report authored by an "ad hoc task force" commissioned by the Surgeon General to study the effects of diethylstilbestrol (DES). The task force was comprised of a group of doctors and experts employed with the Federal Government. A large group of consultants participated actively in preparing the final report. The Plaintiff sought admission of the task force's report. The Court declined to admit the report finding it was not the sort of neutral fact-finding investigation conducted by a government agency that is contemplated by Rule 803 (8) (C). <u>Id</u> at 1391. The Court was troubled by the presence of interested parties on the consulting staff and the lack of any representatives from the pharmaceutical industry. <u>Id</u>. at 1390 – 1391. In the instant case the Stern Commission did not include a member of the Sheriff's Department. The Commission relied on the opinions and information sought from parties with a potential predisposition against the Department and Sheriff Rouse. As in <u>Wetherill</u>, the Report produced by the Stern Commission was not the type of neutral fact-finding report contemplated under the Rule and should be excluded. *See also*, <u>Ariza v. City of New York</u>, 139 F.3d 132 (2nd Cir. 1998)(Report entitled "Police Corruption and Culture: A Focus Group Methodology", that summarized discussions and made recommendations regarding future department behavior, held not the type of factual investigatory report contemplated by the Rule 803 (8)(C ).)

The composition of the Commission indicates the purpose of the Commission was to improve the operations and management of the Sheriff's Department. It was not designed as a "neutral fact-finding" panel. A review of the Biographies of the Commission Members (Report, Pgs. 61- 64 of 64) supports its purpose. At least two of the members, including the Chair, had prior dealings with the Sheriff's Department. While Donald Stern served as the U.S. Attorney for the District of Massachusetts, indictments were returned against seven Nashua Street Jail

Officers. Member Ralph I. Fine served as Chairman of the Finance Commission of the City of Boston. During his tenure in the 1970s, an extensive investigation into the finances of the Sheriff's Department was conducted that resulted in the resignation of the Sheriff. The expertise of the Commission members enhanced the value of the Report as a mechanism for improvement of the Department. The Report however, was not intended to be neutral fact-finding investigative report contemplated by the Rule.

    2. The Report Lacks Trustworthiness.

If the Court finds the Report is admissible under Rule 803 (8)(C), it must exclude the Report if the sources of information or other circumstances indicate lack of trustworthiness. The burden is on the party opposing the admittance to show that the report is untrustworthy. *See*, Lubanski v. Coleco Industries, Inc. 929 F 2d 42 (1st Cir. 1991). Factors to be considered in determining trustworthiness include: 1) the timeliness of the investigation; 2) the investigator's skill or experience; 3) whether a hearing was held; and 4) possible bias when reports are prepared with a view to possible litigation. Beech Aircraft Corp. v. Rainey, 488 U.S. at 167 n. 11.

In relating the four factors to the facts and allegations of the instant case, it is clear the report is untrustworthy and therefore inadmissible. The Commission was established in the fall of 2001. The Report was issued October 2002, but does not specify a time frame of review. It does refer to data from FY 2001.

The skill and experience of the Commission members may be commendable, however, it must be recognized that the Commission was not in the business of preparing factual reports and recommendations on the operations of law enforcement agencies. The report is a unique document in that regard. There was no prototype or formula to be followed in preparation of the

5

report as in government agency reports that are admitted under Rule. For example, factual Reports from the USDA- <u>Reynolds v. Giuliani</u>, 1999 WL 33027, (D. Mass)  JAG report – <u>Beech Aircraft Corp. v. Rainey</u>, 488 U.S. 153 (1988); United States Coast Guard Report – <u>Puerto Rico Ports Authority v. M/V Manhattan Prince</u>, 897 F. 2d 1 1sr Cir. (1990); Report of the New Hampshire Liquor Commission - <u>Brennan v. Horsefeathers In</u>c. 2002 WL 13495089 (D.N.H). The inexperience of the Commission in producing such a document is indicative of a lack of trustworthiness in the document produced.

The third factor to be considered also weighs in favor or exclusion of the Report.  There was no hearing prior to the issuance of the Report. A hearing would ensure trustworthiness since both sides of an issue would have an opportunity to be heard. Also, the safeguards evident in hearings, including the opportunity to cross-examine, contribute to the trustworthiness of a final fact finding report.

Finally, possible bias must be examined. The methodology of the investigation in this case demonstrates an obvious bias against the Sheriff and the Sheriff's Department. The Commission spoke to and relied on information provided by a variety of individuals, many who were predisposed to relay only negative things about the Sheriff personally, and the Sheriff's Department, including attorneys with litigation pending against the Department.  Many of the constituents consulted in preparation of the Report have inherent long standing adverse relationships with the Sheriff's Department and an obvious bias.

The Rule provides for admissibility unless the sources of information or **other circumstances** indicate lack of trustworthiness (emphasis supplied).  The other circumstances in this case include the intense negative publicity that bombarded the Sheriff and the Department prior to the selection of the Commission. The publicity had to have an effect on the outcome of

6

the Report. Given the avalanche of negative publicity and commentary, including the media's attack on the American Correctional Association,[2] criticism of the Sheriff and the Department was a forgone conclusion. Clearly, the report was not going to commend the Sheriff or the Department. The circumstances surrounding the commencement of the Commission as well as the selection of Commission members make it untrustworthy for purposes of Fed. R. Evid. 803 (8)(C).

        3.   The Self-Critical Analysis Privilege Prohibits The Introduction Of The Report In The Summary Judgment Record.

Fed. R. Evid. 501 provides that "[t]he privilege of a witness, person, government, state, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the Courts of the United States in light of reason and experience." One such privilege is the self-critical analysis privilege. The privilege has been accepted in the First Circuit. See, O'Connor v. Chrysler Corp. 86 F.R.D. 211 (D. Mass. 1980); Whittingham v. Amherst College, 164 F.R.D. 124 (D. Mass. 1995). Bredice v. Doctors Hospital, Inc, 50 F.R.D. 249 (D.D.C. 1970), aff'd 479 F. 2d 920 (D.D.Cir.1973) was the first federal case to recognize the common-law self- critical analysis privilege. *Paved with Good Intentions: The Use of Internal Evaluations of Law Enforcement Agencies in Civil Lawsuits*, 41 Fed. B. News & J. 364 (1994). While generally the privilege is asserted with regard to discovery matters, the underlying basis of the privilege is relevant here. The privilege is based upon the concern that disclosure of documents reflecting candid self-examination will deter or suppress socially useful investigations and evaluations. Id. There is a strong public policy in favor of encouraging law enforcement agencies to cooperate fully with investigative committees such as the Stern Commission. Law enforcement agencies that seek to re-evaluate past practices or improve operations for the public

---

[2] The American Correctional Association had certified the Nashua Street Jail.

7

good must be allowed to encourage frank and open discussion. Protection under the self-critical analysis privilege would assure that constructive assessments and unadulterated opinions would not be suppressed or tempered by concerns of civil liability exposure. Public policy considerations in excluding the Report outweigh any value to the Plaintiff's cause of action in this case.

B. **The Plaintiff's Affidavit Contains Inadmissible Hearsay, Which Must Be Stricken From The Summary Judgment Record.**

The question of admissibility of an affidavit in support of a motion or opposition to a motion is governed by Rule 56(e). That rule provides:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Fed.R.Civ.P. 56(e).

In assessing the admissibility of an affidavit,

> [P]ersonal knowledge is the touchstone. *See Sheinkopf v. Stone,* 927 F.2d 1259, 1271 (1st Cir.1991) ("**It is apodictic that an affidavit ... made upon information and belief ... does not comply with Rule 56(e)**.") (citations and internal quotation marks omitted). Of course, the requisite personal knowledge must concern facts as opposed to conclusions, assumptions, or surmise. *Stagman v. Ryan,* 176 F.3d 986, 995 (7th Cir.1999). While the line between facts and non-facts often seems blurry, courts nonetheless must strive to plot it. *Cf. Dartmouth Review v. Dartmouth Coll.,* 889 F.2d 13, 16 (1st Cir.1989) (explaining, in the context of a motion to dismiss, that "facts are susceptible to objective verification" whereas conclusions "are empirically unverifiable in the usual case").

Perez v. Volvo Car Corp., 247 F.3d 303, 315, 316 (1st Cir. 2001) (emphasis added).

Defendants object to three paragraphs in Paul Davis' Affidavit submitted in opposition to Defendants' Motion for Summary Judgment: ¶¶ 6, 9 and 10.  The objection to ¶ 6 is premised on the fact that Davis does not articulate facts demonstrating that this paragraph is based on his

8

personal knowledge.[3]  Additionally, Davis admittedly relies "upon information and belief" in support of ¶¶ 9 and 10 of his affidavit.  As such these paragraphs should be stricken completely from the summary judgment record, as they are not based on his personal knowledge.

C. **The Boston Globe Article Contains Inadmissible Hearsay, Which Must Be Stricken From the Summary Judgment Record**

Newspaper articles are insufficient evidence at the summary judgment stage.  Stearns v. Dion, 2005 WL 217037 at * 11 (D. Me.) (citations omitted).  Exhibit E to plaintiff's opposition purports to be an article that appeared in the Boston Globe on July 22, 2005.  The article purports to quote deposition testimony from another case in which the witnesses' account of an event was allegedly at odds with a statement of Sheriff Cabral.  The plaintiff attempts to use the multiple levels of hearsay in this article to prove that the Sheriff retaliated against him. (See Plaintiff's Statement of Disputed Facts at ¶ 75).  The article is inadmissible hearsay and should be stricken from the summary judgment record.

D. **Raymond Helgemoe's Report Should Be Stricken From The Summary Judgment Record, As It Is Untimely And Relies On Inadmissible Hearsay**

On or about January 26, 2005, the parties submitted a Joint Discovery Plan, which contained a deadline of July 15, 2005 for the plaintiff's disclosure of any expert witness and accompanying materials.  See Joint Discovery Plan, attached hereto as Exhibit B.  See also Affidavit of James M. Davin, attached hereto as Exhibit C.

Notwithstanding the plaintiff's deadline for submission of all expert materials by July 15, 2005, plaintiff did not provide any expert disclosures by this date.  Instead, on or about July 27, 2005 plaintiff provided Raymond Helgemoe's curriculum vitae, but not any report.  The expert

---

[3] The information contained in ¶ 6 is also contradicted by the sworn trial testimony provided by Brian Murphy.  See *Transcript of Testimony of Brian Murphy Before the Honorable Reginald C. Lindsay, United States District Court, 11th Day of Trial*, dated March 17, 2003 and attached hereto as Exhibit A at p. 16 (Murphy testimony about how he

report on which plaintiff now relies was not received by defendants until on or about September 5, 2005, approximately 52 days after the deadline on which the parties had previously agreed.[4] Defendants therefore ask this Court to strike the Helgemoe report from the summary judgment record.

The Helgemoe report should also be stricken for the additional reason that it relies on the hearsay within the Report of the Special Commission, which defendants have asked the Court to strike in Argument A above.

### Conclusion

For all of the foregoing reasons, Defendants ask this Court to strike the Report on the Special Commission on the Suffolk County Sheriff's Department (Exhibit C); ¶¶ 6, 9 and 10 of Paul Davis' affidavit (Exhibit A); the July 22, 2005 Boston Globe article (Exhibit E); and the Report of Raymond Helgemoe (Exhibit D)

                                                Respectfully Submitted,
                                                For the Defendants
                                                By their Attorney

                                                /s/ James M. Davin
                                                James M. Davin
                                                B.B.O. # 566973
                                                Deputy General Counsel
                                                Suffolk County Sheriff's Department
                                                200 Nashua Street
                                                Boston, MA  02114
Date:   October 5, 2005                     (617) 9616679

---

called for a SERT team over his radio after witnessing physical altercation between jail officers and a pre-trial detainee).

[4] There was an explicit understanding that the July 15, 2005 deadline pertained to all materials under the federal rules, including curriculum vitae and expert reports.  See Affidavit of James M. Davin at ¶¶ 3-5.